THE ATTORNEY GENERAL, *ex relatione* John Taylor.

vs.

## HENRY BROWN.

Where power or duty is given to or imposed upon the Governor, by the Constitution or the laws, such power is to be exercised or duty performed, independently, and free from the interposition of this or any other department of the government.

The policy of government, in this country, is to distribute its powers among distinct departments, (executive, legislative and judicial,) each of which is independent and co-ordinate; in the appropriate action of either, the other will not interfere.

So long as the power of removal from office is vested in the Governor, no other branch or department of the government can control its exercise, nor have any right to question the motives of the executive.

By the passage of an act by the legislature, its power to legislate upon the same subject matter, at the same session, is not exhausted. It may pass other acts, modifying or repealing the former act.

Whenever two acts of the legislature are susceptible of a construction which will render both operative, without doing violence to either, the court will, if possible, give them such a construction.

It is only when the nature of the provisions, or the words used, are such as to render it impossible to reconcile them, that the court will apply the doctrine of repeal by implication.

The rule of construction is, that if there be two affirmative statutes, or two affirmative sections of the same statute, upon the same subject, the one does not repeal the other if both may consist together; and such a construction will be sought, as will reconcile them.

Other rules for the construction of statutes:

The act of March 10, 1853, in relation to the State prison, did not repeal the 49th section of the act of April 19, 1852.

33

JUNE TERM,
1853.

Attorney
General
vs.
Brown.

By the 49th section of the act of April 19, 1852, the Governor has the right to remove the incumbent of the office of State prison commissioner, and on such removal a vacancy occurs which the Governor may fill by appointment.

Information in the nature of a *quo warranto*, filed by the attorney general on the relation of John Taylor, charging that Henry Brown, of the town of Chester, in the county of Dodge, for the space of two months and upwards, has held and exercised, and still does exercise the office of State's prison commissioner, of the State of Wisconsin, without any legal election, appointment, warrant or authority whatever, therefor.

And further, giving the court to understand and be informed, that on the 28th day of March, A. D., 1853, the legislature, by joint ballot of the two houses, duly elected the said John Taylor, State's prison commissioner, and that the said Taylor has ever since been, and still is rightfully entitled to hold, use and exercise the said office ; that the said Henry Brown, since the time of the said election of the said Taylor, has usurped, intruded into, and unlawfully held and exercised, and still does usurp, intrude into, and unlawfully hold and exercise, to-wit, &c. : in contempt of the State of Wisconsin, and to its great damage and prejudice ; praying advice, process, &c., and that the said Brown be made to answer, &c, by what warrant, &c.

This information was filed on the 24th day of June, in this present term, and on the 15th day of July, in the same term, the said Brown filed his answer, by what warrant, &c., and says, that the said attorney general ought not to have and maintain his information, &c., because he says, that heretofore, after the said 28th day of March, 1853, and after the said al-

leged election of the said John Taylor to the said of-June Term, 1853. fice of State prison commissioner, &c., to wit, on the second day of April, in the year last aforesaid, at, &c., Attorney General vs. Brown. Leonard J. Farwell then and there being Governor of the said State, and then and there having lawful and competent authority in that behalf, did duly remove the said John Taylor from the said office, whereby the said John Taylor did then and from thenceforth cease to be entitled further to hold, use, exercise or enjoy the said office, and that afterwards, to wit: on the day and year last aforesaid at, &c., the said Leonard J. Farwell, then being Governor, &c., and then and there having lawful and competent authority, &c., did duly appoint the said Henry Brown to the said office, and did then and there in due form of law under the great seal of the said State, commission him the said Henry Brown to hold, &c., as by the said commission ready, &c., will more fully appear ; of which said commission, &c., the said Brown did accept, &c., and did then and there duly qualify, &c., to hold, &c., and did then and there enter upon the duties, privileges, &c., of the said office, &c. ; and has continued, and still does continue, to hold, &c., the said office, as he, the said Henry Brown, lawfully and of right might and may do, which is the same holding, &c., all of which, &c. Wherefore he prays judgment, if the attorney general, &c.

To this answer, the attorney general filed a general demurrer, upon which the case came on to be heard.

*James H. Knowlton,* for the relator. John Taylor claims to be State's prison commissioner, by virtue of an appointment or election by the legislature of last

JUNE TERM, 1853.

Attorney General vs. Brown.

winter. During the session, Taylor was removed by the Governor, and the respondent appointed.

We contend, that the legislature being the appointing power, the Governor, during the session, had no right to remove' or appoint. The act of last winter gives this office a definite term. *Sess. Laws* 1852, 696, § 2 ; *id.* 319, 218. As to removal by the Governor, and his power in relation thereto, see page 704, section 49.

It is *the* commissioner whom the Governor has power to appoint, that the Governor has power to remove. When the legislature provided for the appointment to be made by joint ballot of both houses, the Governor had no longer the power to remove the appointee so made.

The act of 1853 repeals " all acts and parts of acts conflicting with the provisions of this act." If the Governor can remove under this act, he may remove at his own will the person elected by the people ; for this statute is to be construed in this case precisely as in the case of one elected by the people.

*Truesdale*, for the relator. The legislature has not the power to pass an act repealing a former act, or an act repugnant to a former act at the same session. *Dwarras on Stat.; Com. Dig. Tit. Parliament.*

*E. G. Ryan*, for the respondent, made the following points :

1st. Sec. 49 of Chap. 477, of the laws of 1852, confers a power on the Governor, which can be divested only by express words of repeal. 5 *Comyn's Dig. Parl. R.* 8, *p.* 324 ; *Dwarris on Stat.* 668 ; *Atty Gen. vs. Newman,* 1 *Price R.* 438.

2d. The repeal of the 49th Sec. Chap. 477, of the laws of 1852, by Chap. 24 of the laws of 1853, contended for by the relator, is a repeal by implication.

The law does not favor such repeals; and unless the subsequent act be irreconcilably inconsistent with the former act, the courts will not infer a repeal. *Dwarris on Stat.* 673-674; 7 *Bacon's Ab. Statute, D.* 443; 5 *Comyn's Dig. Parl. R.* 9 *a, p.* 324; *Goldson vs. Buck,* 15 *East.* 379; *Payne vs. Connor,* 3 *Bibb.* 180; *Brown vs. Miller,* 4 *J. J. Marsh,* 474; *Bruce vs. Schuyler,* 4 *Gilman,* 221-271; *Bowen vs. Lease,* 5 *Hill,* 221; *Haynes vs. Jenks,* 2 *Pick.* 172; *Goddard vs. Boston,* 20 *Pick.* 407; *Snell vs. Bridgewater Co.,* 24 *Pick.* 297.

The repealing clause of Chap. 24, of 1853, is of all acts *conflicting* with the provisions of that act.

And there is no conflict between Sec. 49, of Chap. 477, of 1852, and Chap. 24, of 1853. They need no office of reconciliation at the hands of the court.

No office, in our system, is so essentially despotic in its nature, as this office of warden of the Penitentiary. No other office is so liable to abuse. No other office needs so efficient and summary a power of removal.

And so the legislature evidently viewed it. While the commissioners were mere commissioners of a prospective penitentiary, no power of removal was provided; but when the commissioner became warden of the penitentiary de facto, a power of removal was given to the Governor by the act providing for the organization and government of the prison.

Sec. 38 of the act organizing the penitentiary, constitutes the Governor the visitor of the prison; and that and other sections give him a general supervisory charge over it. And the power of removal given by

the 49th section, is a part of this general control, wisely given to the executive by that act.

The power of appointment has been several times changed; but the power of removal has never been. Chap. 24 of 1853, changes the power of appointment, but does not touch the power of removal. The legislature, sitting some three months in the year, could well exercise the power of appointment, and by the act of 1853, assumed its exercise; but the power of removal could be efficient only in the hands of the Governor, who could exercise it at any time, and with him it is left undisturbed.

3d. The legislative rule set up by the relator, that a statute cannot be repealed during the same session at which it is passed, is an English parliamentary rule, which can have no application to a constitutionally organized legislature, whose powers and disabilities are prescribed by written organic law.

*J. C. Truesdale*, in reply. The brief and points of Mr. T. have not been furnished.

*By the Court*, CRAWFORD, J. This is an information in the nature of a *quo warranto*, wherein the respondent, Henry Brown, is charged with having usurped, intruded into, and unlawfully held and exercised the office of State's prison commissioner, which he still holds and exercises, to the damage and prejudice of the relator, John Taylor, who claims to be the person rightfully entitled to said office.

To this information the respondent has a plea, admitting that he did enter into the office, and now does enjoy and exercise the same, and setting forth matter

in justification, and in support of the right which he claims to said office.

To this plea the attorney general, on behalf of the relator, has interposed a general demurrer, which requires us to examine the several statutory provisions relating to the organization and control of the State prison, in order to decide upon the sufficiency of the plea and the rights of the parties.

The first action of the legislature upon the subject of a State prison, is to be found in chapter two hundred and eighty-seven, of the acts of 1851. By the first section of this act, the Governor was authorized to appoint three commissioners, to be known as State's prison commissioners, whose powers and duties are specified in the act; but there is no term of office designated therein. The next enactment on the subject, was chapter one hundred and twenty-nine, of the acts of 1853, whereby it was provided, that the State prison commissioners should be elected on joint ballot of the two houses of the Legislature at the session, who should hold their office for the terms of one, two and three years, respectively, as might be determined by them by lot. The third section of this act provides for an annual election, by the people, (at the general election,) of one commissioner, whose term of office should continue for three years, and in case of a vacancy, the Governor was empowered to appoint a commissioner, to hold for the residue of the unexpired term. The fourth section amends the act of March 14, 1851, (the one first referred to above,) so that it should not conflict with that of March 19, 1852. At the same session of the legislature, and before any election on joint ballot of the two houses,

June Term,
1853.

Attorney
General
vs.
Brown.

as provided in the last act, there was still further legislation on the same subject.

On the first day of April, A. D, 1852, two acts were approved, the first of which was to enable the Governor to borrow money from the school fund to defray certain expenses of the session, and which has no bearing on this case. The other expressly repealed the act March 19, 1852, (previously enacted at the same session,) and authorized the Governor "to appoint *one* or more commissioners, not exceeding three, to superintend, and to take charge of the State prison.". It abolished the offices created by the act of March 14, 1851, but contained no other provisions. Again, on the 19th day of April, 1852, a third act on the subject was approved, entitled "an act for providing *more fully* for the organization of the State prison, and for repealing chapter two hundred and eighty-seven, of the Session Laws of 1851." By the second section of this act it is provided, that " the organization of the State prison shall consist of one commissioner, who shall be appointed, as provided for in the act of April 1st, 1852, &c., which act of April 1st, as we have seen, gave the authority to appoint, to the Governor. The forty-ninth section of the act of April 19, 1852, gives power to the Governor *to remove* the commissioner "when he shall believe that the best interests of the State demand such removal;" and section fifty-three repeals all of the act of March 14th, 1851. Throughout the act of April 19th, 1852, as, indeed, in all of the previous legislation on this matter, it is obvious that the legislature intended to vest in the Governor a supervisory control over all things pertaining to the State prison.

We may here observe, that upon the act of April

19, 1852, becoming operative, the only enactments which thereafter remained in force, relating to the State prison, were the two acts of April 1, 1852, and the act of April 19, 1852, because the act of March 14, 1851, and that of March 19, 1852, had been repealed.

The last provision made by the legislature on this subject, is chapter twenty-four of the Session Laws of 1853, approved March 10. By the first section of this act, it is provided that the two houses of the legislature, in joint ballot, shall elect one commissioner, to be styled State prison commissioner, and that he shall hold his office until the 1st day of January next thereafter, and until a successor shall have been elected and qualified. The second section provides for an election of a commissioner at the general election in November, 1853, and biennially thereafter. The third section empowers the Governor to appoint, in case a vacancy shall occur, and the person so appointed shall hold the office for the residue of the unexpired term; and the fourth section repeals all acts and parts of acts conflicting with the provisions of this act.

It appears from the pleadings before us, that in accordance with the provisions of Chapter twenty-four of the Session Laws of 1853, Mr. Taylor was elected by the two houses of the legislature in joint ballot, on the 28th day of March, A. D. 1853, to this office of commissioner; that after his election, to wit: on the 2d day of April, A. D. 1853, the Governor of this State did remove him from the said office, by virtue of authority in him, the said Governor, in that behalf vested; and that by like competent authority, on the said 2d day of April, A. D. 1853, the Governor did duly appoint Mr. Brown, to hold, exercise and enjoy

the said office; that Mr. Brown did accept the appointment, and did qualify and entitle himself to the office, and entered into the same, and has ever since enjoyed and exercised the said office.

The right of M. Brown (the respondent) to this office, depends entirely upon the question, whether the Governor was lawfully vested with the power to remove Mr. Taylor after he had been elected by the legislature.

The policy of our constitution and laws has assigned to the different departments of the state government, distinct and different duties, in the performance of which, it is intended that they shall be entirely independent of each other; so that whatever power or duty is expressly given to, or imposed upon the executive department, is altogether free from the interference of the other branches of the government. Especially is this the case, where the subject is committed to the *discretion* of the chief executive officer, either by the constitution or by the laws. So long as the power is vested in him, it is to be by him exercised, and no other branch of the government can control its exercise.

But it would be alike unbecoming and unwarranted on our part, to enquire into the motives of the Governor, in the exercise of a discretion given to him alone, in any case. He is responsible for his acts in such case, not to the courts, but to the people; and whenever experience shall have demonstrated the impolicy or impropriety of clothing the chief executive officer of the state with a power of removing inferior officers, at his discretion, or "when he shall believe the best interests of the state demand such removal" it may then be the time for the people, in whose hands alone

June Term,
1853.

Attorney
General
vs.
Brown.

is the remedy, to eradicate the supposed evil. But courts are created to construe the laws as they are, not to declare what they should be.

It is no part of our duty to impugn the action of the Governor in such a case, but on the contrary, we are bound to hold him justified in whatever conclusion he may have formed. In this case, therefore, whatever may have influenced the executive in the removal of Mr. Taylor, has no claim to our attention ; it is wholly foreign to the question before us, and can have no bearing upon it.

On the part of the relator, it is claimed that the act of 1853, which deprived the Governor of the power to appoint this officer, except in the event of a vacancy, necessarily deprived him of the power of removal, and was a virtual repeal of the 49th section of the act of April 19, 1852 ; because, it is said, the mode of choosing the officer, and the whole scope and tenor of the act of 1853, is inconsistent with that of April 19, 1852. It is also claimed that the legislature had no power to enact the law of April 19, 1852, after it had, on a previous day during the same session, passed a law on the same subject matter. Perhaps either house might, by its own rules, prohibit the introduction of a bill modifying, changing or abolishing the provisions of an act on the same subject matter, passed at a previous time in the same session, and this on the ground of public policy ; but it would certainly be a novel, if not a very dangerous doctrine, to hold that whenever the legislature had enacted a law on a given subject, they thereupon ceased to possess any legislative control over that subject during the same session ; for, if this were so, no matter how clearly it might be shown that the law so passed was im-

politic or injurious in its provisions, if the legislature were ever so well satisfied of the necessity of alteration or repeal; its power is gone; it is become impotent by reason of its former act. Sir William Blackstone, in speaking of the British Parliament, says that " the supreme and absolute authority of this State " is vested in it by the Constitution, (1 *Comm.* 105,) and that an act of parliament is " the exercise of the highest authority " that kingdom acknowledges upon earth, (*id.* 144 ;) and under our own Constitution, which vests the whole legislative power in the senate and assembly, subject to the approval of the Governor to a certain extent, it must be admitted that an act of the legislature is the exercise of the highest authority we acknowledge ; for where is there a higher or more controlling power, so long as the act is not in violation of the Constitution or the laws of God ? What, then, can limit the power, so admitted, or prevent its exercise at any time ? We know of no provision of the Constitution which would be violated, where no private right is invaded. But a sound public sentiment would afford the only effective restriction upon an impolitic tendency to hasty and inconsiderate legislation. We can see no good objection to the validity of the act of April 19, 1852, because of its being enacted at the same session, and subsequent to the acts of March 19 and April 1, 1852; and we hold that it was competent for the legislature to repeal the act of March 19, which provided for an election by the legislature, and to substitute therefor an appointment by the Governor, as it did by the act of April 19, 1852.

The remaining question is, whether the act of 1853 repeals the 49th section of the act of April 19, 1852.

If it did, it must be because there is a conflict or inconsistency between them.

It is neither the duty nor the province of courts to construe two separate acts, so that the latter of the two must of necessity repeal the former. In the exercise of this power by a court, the line of distinction between legitimate *judicial* duties, and assumed *legislative* ones, may be sometimes so very vague and indefinite as to be imperceptible. Whenever the two acts are susceptible of a construction which will give an operation to both, without doing violence to either, it is incumbent on the court to search for some allowable means to give them such a construction. This will best further the intention of the Legislature ; and it is only when the nature of the provisions, and the words used are such as to render it impossible to reconcile them, that the court will feel called upon to apply the doctrine of repeal by implication. The authorities cited by the counsel for the respondent are conclusive upon this point.

" The rule of construction on this subject is, that if there be two affirmative statutes, or two affirmative sections in the same statute, upon the same subject, the one does not repeal the other, if both may consist together, and we ought to seek for such a construction as will reconcile them together. 4 *Gilm.* 274."

" The invariable rule of construction in respect to the repealing of statutes by implication is, that the earliest act remains in force, unless the two are mani. festly inconsistent with, and repugnant to each other, or unless in the latest act some express notice is taken of the former, plainly indicating an intention to abrogate it. * * * * * Hence a repeal by implication is not favored ; on the contrary, courts are bound to uphold the prior law, if the two acts may well sub-

sist together." 5 *Hill*, 225, *and cases there cited.* See also 5 *Mass.* 382 ; 2 *Pick.* 176 ; 20 *id.* 410 ; 24 *id.* 297 ; *Dwarris on Stat.* 674 ; 3 *Bibb.* 180.

In this case there can be no doubt but that the act of March 10, 1853, in so far as it provided for the election of State commissioner by joint ballot of the two houses of the Legislature, and providing for succeeding elections of that officer by the people was repugnant to the act of April 19, 1852, and to that extent the latter act was repealed by the former ; but an examination of both will show, that there are many, very important provisions in the act of April 19th, 1852, which have not been, in any way affected by the act of 1853 ; and among these is the power given to the Governor to remove, when he shall deem it to the best interests of the State. There is no conflict or inconsistency between the two acts on this subject, for the exercise of the power of removal is quite compatible with the due enforcement of every provision of the act of 1853 ; and we cannot believe that by virtue of an election by the Legislature, this officer was intended to be made exempt from a liability to be removed by the executive, in the absence of language to express such intention ; and especially so, when the former act gave the power of removal in express terms.

We have given an attentive examination to this case, and we are all clearly of opinion, that the act of March 10, 1853, did not repeal the 49th section of the act of April 19, 1852, and we therefore hold that the respondent, Henry Brown, has not usurped or intruded into the office of State Prison Commissioner, but that he lawfully holds and exercises said office, by virtue of an appointment thereto lawfully made by the Governor of this State.