No. 8240.

THE STATE OF LOUISIANA EX REL. ATTORNEY GENERAL AND WILLIAM MARTIN vs. V. LAMANTIA.

The Governor has the power to fill vacancies occurring by death, resignation or removal, during the interim between the sessions of the Legislature, subject to confirmation by the Senate, when it meets. Affirming Decision in 32 An. 934.

The Inspectors of weights and measures for the several Districts of the City of New Orleans, are State, and not Parish, officers.

State ex rel. Attorney General and Martin vs. Lamantia.

Therefore, sec. 3924 of the Revised Statutes, which provides for their removal by the Governor for a certain cause, is not repealed by Art. 201 of the Constitution, which provides for the removal of Parish or municipal officers, by judgment of Court.

In the exercise of the power, given to him by law, of removing public officers for certain causes, the Governor is the sole judge of the existence of such causes, and his action of removal is final and irreversible by the Judiciary.

APPEAL from the Civil District Court, parish of Orleans.   *Houston,* J.

*J. C. Egan,* Attorney General, and *J. P. Hornor* and *F. W. Baker* for the Relators, Appellees :

First—In a proceeding under the "intrusion act," where the last commission expressly declares the vacancy to have arisen from the removal of the prior appointee, the courts are powerless to go behind the appointments made and pass upon the propriety or legality of the action of the executive.   32 An. 934 ; 25 An. 396 ; 12 An. 719 ; 17 An. 161.

Second—The Governor has power to remove inspectors of weights and measures, under section 3929 R. S.

Third—Section 3929 R. S., is not repealed by the Constitution of 1879.   Nicholson & Thompson, 5 Rob. 367.

Fourth—Article 201 of the Constitution, regulating removals, does not apply to State officers appointed by the Governor, who are subject to removal, under existing laws, by the Governor.

*Spencer & White* for Defendant and Appellant :

The sole question presented in this case is:   Has the Governor the power to create a vacancy in the office of Inspector of Weights and Measures for the parish of Orleans by removing the incumbent ?

We maintain that under the Constitution of 1879 the Governor has not that power.

First—The office of Inspector of Weights and Measures is a parish office.

Act No. 297 of 1855, creating the office, now incorporated in the Revised Statutes as sections 3912 *et seq.*, directs the appointment of four Inspectors for the parish of Orleans and one for each of the other parishes. It limits the performance of their functions to the parish within and for which they are appointed. His acts have no validity beyond the parish limits. His functions are in the nature of "police functions," like road overseers, overseers of the poor, etc. (Sec. 3914-15.) The stamp of the Inspector of one parish will not legalize the use of a weight or measure in another parish. His functions are purely local, and of the most subordinate character.

In some sense, every conceivable officer is a State officer; that is, they all hold their places by authority of the State and perform functions created directly or indirectly by the State and relative to the government of the State. Thus, justices of the peace, constables, police jurors, clerks, sheriffs and all other local officers are in this sense State officers— as much State officers as are Inspectors of Weights and Measures. They all, and each of them, perform functions prescribed by the State, and are all commissioned, and many of them appointed, by the Governor.

It is no test of the character of an officer, that he is appointed or commissioned by the Governor. This would make State officers of all police jurors, and all clerks, sheriffs, justices of the peace, etc.—for the first are, by Act 37 of 1880, all appointed by the Governor, and the others have at different times been also appointed by him, and even now may be under certain conditions. Thus if a sheriff, or clerk, or justice of the peace, die, or resign, or be removed, the Governor appoints to the vacancy. Can it be possible that these officers are in such case converted and changed from parish into State officers by the mere fact of the Governor appointing them ?   Who will say that a police juror is a State officer ?   Yet he

is appointed and commissioned by the Governor. If you look to the functions performed by him, they are of the most public and important character, involving the exercise, by delegation, of the sovereign power of taxation, while the Inspector simply polices and verifies the correctness of the weights and measures of his parish. It would be impossible to designate any officer whose functions were more purely local. If his is not a parish office, then there are none such, and those words in the Constitution and laws mean nothing.

Second—If he is a parish officer, the Constitution provides the mode of his removal (Art. 201), and that mode is exclusive.

It is elementary that where the Constitution has provided a mode or modes of removing an officer, no other can be adopted by the Legislature. Why cannot the Legislature provide for removal of your Honors by trial before a commission, or by act of the Governor? Simply because the Constitution has provided the mode of removing you, as it has for the removal of the other executive and judicial officers—those modes are, impeachment or address for some, and trial by court, or address for others.

Art. 201 of the Constitution provides a special mode of removal for "all parish, municipal and ward officers," to wit: by judgment of the District Court.

No other mode can be adopted, and all laws providing other modes are necessarily abrogated and repealed. Cooley Con. Lim. pp. 63, 64 and 88. Also, 31 An. 443-4.

Third—But if these propositions are not true, the law creating the office of Inspector of Weights and Measures does not confer on the Governor the power of removal. Section 3919 gives him the power to fill "vacancy by death or resignation."

The only power of removal by the Governor, provided for in that act, is given by Sec. 3924, which says that the Inspector may employ assistance when necessary at his own expense, "but shall not commit their functions to a substitute without being subject to dismissal by the Governor."

The power of removal given by this statute is not general, but exceptional, and therefore the Court cannot presume its existence. This would be to reverse every rule of legal interpretation.

It was incumbent on relator to show affirmatively that the exception existed which vested the Governor with power to remove.

It is, therefore, manifest that the Court erred in refusing the defendant permission to prove that he had not committed his functions to a substitute, and, therefore, could not be removed. See Bill of Exceptions in note of evidence.

---

The opinion of the Court was delivered by

FENNER, J. Relators allege that Wm. Martin was appointed by the Governor of the State inspector of weights and measures for the first district of New Orleans, on the 26th of January, 1881, *vice* Vincent Lamantia, removed; that said Martin has been duly qualified and commissioned as such officer, in support of which he presents his commission certifying the above allegations; that notwithstanding his removal and the appointment of Martin, said Lamantia refuses to surrender the said office and continues to usurp and intrude into the same, and unlawfully to execute the functions thereof. The relief granted by the "intrusion into office" act is prayed for.

Lamantia, in defence, presents a commission from the preceding Governor of the State, under which he avers that he is the lawful incumbent of the office; denies the power of the Governor to appoint thereto without the concurrence of the Senate; denies the power of the Gov-

ernor to remove for cause or otherwise; and denies that any cause for removal existed.

The questions for examination present themselves logically in the following order:

I.

The power of the Governor to appoint without the concurring action of the Senate depends upon his powers to remove. It is settled, and, indeed, not disputed, that the Governor has power to fill vacancies occurring by death, resignation or removal, during the interim between the sessions of the General Assembly, subject to confirmation by the Senate when it meets. State vs. Rareshide et al., 32 An. 934.

II.

Under the law creating the office in controversy, the Governor had the right to dismiss or remove incumbents for a certain cause therein specified. R. S. Sec. 3924. If that law remains in force, the power still exists.

Unless inconsistent with the Constitution of 1879, the law does remain in force. Const. Art. 258.

Defendant contends that the law is inconsistent with Article 201 of the present Constitution, and is, therefore, repealed.

Art. 201 provides a special mode of removal for certain officers therein named, and for "all other parish, municipal and ward officers." The office here in controversey is not named, and the only question is whether it is a "parish or municipal office."

The State is the fountain of government, from which all powers of government are derived. These powers are exercised through the agency of officers. For convenience and efficiency of administration, the State has created certain political corporations known as cities, towns and parishes, to which it has delegated certain powers of government. In the case of cities and towns these powers are generally defined in their charters or acts of incorporation. In the case of parishes, they are prescribed by general or special statutes of the State relative thereto.

These subordinate corporations, like the State itself, necessarily exercise the functions confided to them, through officers, whose duties, powers, mode of appointment and tenure of office are regulated by law. In a strict and proper sense, a parish or municipal officer is an officer of a parish or municipality, representing the parish or city, exercising powers belonging to the city or parish, and binding them by his acts within the scope of his authority.

This precise view was taken by the Supreme Court of the United States. See Sheboygan Co. vs. Parker, 3 Wall. 93.

In that case, the Constitution of Wisconsin ordained that "all

29

*county officers* shall be elected by the electors of the respective counties." By a special law the legislature constituted a board of commissioners named in the act to represent the county in borrowing money and issuing bonds therefor, in accordance with its provisions. The county contested the bonds, on the ground that the law granting these powers to these commissioners was unconstitutional, because creating "county officers" not elected by the people. The Supreme Court said: "Such persons, in the performance of their special duty, are in no proper sense ' county officers.' They do not exercise any of the political functions of county officers, such as levying taxes, etc.   *   *   *   *An officer of the county is one by whom the county performs its usual political functions, its functions of government."*

Looking to the charter and amendments thereto of the City of New Orleans, and to the laws regulating the powers of parishes, we do not find that the power of regulating and inspecting weights and measures, and to require persons to comply with such regulations, and to impose fines and penalties for non-compliance, and exacting fees for inspection, was ever conferred upon any city · or parish. These were powers of government reserved to the State, capable of being exercised by the State alone, and actually exercised by herself directly, through officers appointed by the Governor, representing the State exclusively and accountable to the State only.

It is difficult to conceive upon what principle such an officer can be called a " parish or municipal officer."

In the case of Wilson vs. Wiltz, 32 An. 688, we had occasion to express our views on the question, whether a public administrator was a State or a parish officer, and in holding him to be the former, we said: "He holds his office directly from the State under appointment by the Governor of the State, and gives bond in favor of the State. His functions are regulated exclusively by the general laws of the State. He derives no power, directly or indirectly, from the parish or from the people thereof. He has no connection of any kind with the parish or municipal government, and exercises no functions having reference to such government or any connection whatever with parochial or municipal officers. Although he may only administer upon successions lawfully opened in the City of New Orleans, his authority over property belonging to successions is co-extensive with the limits of the State; and, *quoad* such property, he may perform the functions of his office in any parish of the State."

With the exception of the last paragraph, the tests here stated are fully applicable to the office now in question. The circumstance last mentioned was an accidental characteristic of the office then referred to, mentioned to enforce the position; but it is not an essential test, as is

apparent from the fact that a Judge of the Civil District Court of this parish, though he cannot exercise his functions outside of the parish, is, without dispute, a State officer.

The contention that, because the law creating inspectors, requires the standard set of weights and measures to be provided at the expense of the City of New Orleans, and of the various parishes, and because the city authorities are authorized to pass regulations relative to the police of weights and measures for the purpose of aiding in the execution of the law, the nature of the office is in any manner, affected thereby, has no force. These provisions are similar to the one requiring parishes to provide court-houses for the State judiciary, and to those general police powers which are granted to aid in the execution of the general laws of the State.

We are constrained to conclude that the office here in question can, in no possible sense, be considered as a parish or municipal office.

## III.

It is next contended that, as the power of the Governor to dismiss or remove is limited to dismissal for a special cause stated in the act, it was the duty of the Court in this case to inquire, whether or not, the specified cause existed in the present case, as a basis for the Governor's action, and that the lower court erred in refusing to receive evidence on this point.

In the case of the State vs. Rareshide, 32 An. 934, speaking with regard to this very law, we said: " Had the defendants or any of them * * * been removed, and the commissions of the last appointees expressly declared the vacancy or vacancies arising from such cause, and the filling of the same, we would have been powerless to go behind the appointments and pass upon the propriety or legality of the action of the executive." This was, perhaps *obiter* in that case, and we have now given the maturest consideration to the question and have made a most exhaustive examination of authorities bearing thereon.

In the case of State vs. Doherty, 25 An. 119, which with Dayries vs. Yoist, 25 An. 396, are the latest decisions of this court on the point, the doctrine is clearly laid down. The law provided that a tax collector " failing or refusing to do his duty, as prescribed in this act, shall be liable to dismissal from office by the Governor." As in the present case, the relator presented a commission certifying his appointment, *"vice* T. Doherty removed." In disposing of the question now under consideration, the Court said: " When the Governor removed the defendant and appointed the relator, he decided that the defendant had failed or refused to do his duty, because it was in this contingency only that he had the right to remove him. However erroneous the decision of the Governor on that

question may be, we do not think it can, under our system of government be examined by the Courts.

The legislature created the office; and the law provided that the Governor might make the appointment, and for a certain cause, remove the officer appointed by him.

Here the law invested the Governor with a discretionary power which could alone be exercised by him. The decision of all the Courts of the State could not compel him to make the removal. The removal of defendant for neglect of duty was the exercise of executive discretion. The grant of power to the executive to remove an officer for a certain cause implies authority to judge of the existence of that cause.

The power, vested exclusively in executive discretion, cannot be controlled in its exercise by any other branch of the government. 'The policy of our Constitution and laws has assigned to the different departments of the State government distinct and different duties, in the performance of which it is intended that they shall be entirely independent of each other, so that whatever power or duty is expressly given to or imposed upon the executive department is altogether free from the other branches of the government.' Attorney General vs. Brown, 1 Wis. 522. To institute the inquiry as to the correctness of the cause for which the Governor removed the defendant, would be a direct attack upon the independence of the executive, 'and a usurpation of power subversive of the Constitution.'"

It is vain to deny that this doctrine, if sound and authoritative, covers and decides this case; and it is inconsistent with, and overrules the contrary, ill-considered and unreasoned suggestions contained in the decision of Dubuc vs. Voss, 19 An. 210.

The law provides that the inspectors "may employ assistance when necessary, at their own expense, but shall not commit their functions to a substitue without being subject to dismissal from office by the Governor." It is clear that the power here vested in the Governor necessarily involves the exercise of discretion. Whether or not the officer has "committed his functions to a substitute" is a question of fact involving evidence and requiring decision. It is also a question of construction, as to what constitutes the commission of his functions to a substitute, in the sense of the law, and as to where the line of division runs between the legitimate employment of assistance and the prohibited commission to a substitute. The solution of these questions of fact and legal construction are necessarily confided to the executive discretion. Had these questions been submitted to judicial determination, a Court might have decided them erroneously; nay, a corrupt Judge might have decided them in flagitious opposition to the plainest law and the clearest

evidence; and yet the decision would have been absolutely binding upon the parties and all other departments of the government.

The law on the subject is well expounded by the Supreme Court of Texas: "There can be no question of the power of the Governor to remove for the specified' causes.    *    *    He did' remove the appellee and appoint the appellant as his successor.    *    *    The law makes no provision for ascertaining the existence of the causes, or for revising the action of the Governor, by any other authority or tribunal.  In thus conferring the power of removal, to be exercised by him, without the concurrence of any other authority to ascertain the existence of the causes by judicial inquiry or otherwise, and without giving any power of revising his decision, the law made him, necessarily, the sole judge of the existence of the causes, and his decision is, necessarily, final and irreversible.  No principle is more firmly established, than that where a special and exclusive authority is delegated to any tribunal or officer of the Government, and no mode of revising his decision, by appeal or otherwise, is provided by law, his action is final and conclusive of the matter submitted to his decision.  This principle applies to all officers and tribunals to whom, or to which, a special authority is delegated; and not less to' the Chief Executive officer of the State, than to other officers and tribunals, constituted with a special and limited, but exclusive, authority."

Keenan vs. Perry, 24 Tex. 253.

To same ·effect: People vs. Stout, 11 Abb. Pr. 17, 19th Id. 171.

Wright vs. Defrees, 8 Ind. 302.

Attorney General vs. Brown, 1 Wis. 522.

Judge Cooley treats this as settled doctrine.  In discussing the power of courts to inquire into the motives of legislative action, he says: "The reasons are the same here as those which preclude an inquiry into the motives of the Governor in the exercise of a discretion vested in him exclusively.  He is responsible for his acts in such a case, not to the courts but to the people."

Cooley, Const. L. p. 187.

It thus appears that the reasons underlying this doctrine, rise far above any considerations of private interest or of injuries which may result to individuals from abuse of official discretion.  They are founded in the elementary principles lying at the base of our system of Government, the most essential of which are the distribution of powers amongst co-ordinate departments and the preservation of the independence of each within its sphere.

The Governor had power to remove for a certain cause.  He has removed.  We are bound to assume that he removed for the cause

specified, and in the proper exercise of his official discretion, over which we have no revisory power. He has the power to fill vacancies occasioned by removal, subject to confirmation by the Senate when it meets.

It is, therefore, ordered that the judgment appealed from be affirmed at appellant's costs.