The People ex rel., etc. Plaintiff, v. Martin, Defendant.

The People ex rel., etc., Plaintiff, v. Orr, Defendant.

1. Executive and Judicial Powers.

The power of the governor over the fire and police board of the city of Denver in respect to orders of appointment and removal depends entirely upon the terms of the charter as amended by the legislature in 1893; and it is the province of the courts to construe such legislative act in cases of actual litigation arising thereunder.

2. Departments of Government.

The several departments of the government are equal in dignity and of co-ordinate authority, and neither can subject the other to its jurisdiction, or strip it of any portion of its constitutional powers; but the judiciary is the final authority in the construction of the constitution and the laws, and its construction should be received and followed by the other departments.

3. Stare Decisis.

The decision in *Trimble v. The People ex rel. Phelps*, ante, 187, approved.

4. Fire and Police Departments non Partisan.

The limitation clause in the charter of 1893 forbidding the governor to remove members of the fire and police board for political reasons was intended to promote efficiency in the fire and police departments, and to prevent their being used to advance the interests of any political party or individual; but as the charter now stands, practical effect cannot be given to such limitation, except as it may operate upon the conscience of the executive, and so control his official conduct.

5. Presumption in Favor of the Governor.

It is a presumption of law that every public officer does his duty; and

this presumption is especially strong in the case of the governor—
the chief executive officer of an independent state.

6. CAUSE OF REMOVAL, HOW PROVED.

Under the charter of 1893, when the governor makes an order for the
removal of a member of the fire and police board, and states the
cause therefor in writing, such written statement by the governor
must be held the exclusive and conclusive proof of the cause for
making such order.

*Original Proceedings in this Court by Quo Warranto.*

THE above entitled cases are considered together in the
opinion; they were argued and submitted together, the
pleadings being substantially the same except as to the names
of the parties and offices.

The informations show, *inter alia*, that respondent Martin
was excise commissioner, that respondent Orr was fire com-
missioner, and that, as such, they were members of the fire
and police board of the city of Denver when the controversy
herein arose, and that they have ever since continued to act
as such officers.

In January, 1894, while respondents were so holding said
offices, the governor preferred charges against them for mis-
conduct; upon a hearing before the governor, evidence was
introduced and the parties were heard in their own behalf,
and upon the conclusion of the hearing the following find-
ings were made and stated in writing by the governor:

"I, therefore, find from the evidence in this case that:

"First: The defendants, as members of the fire and police
board, in knowingly sending special policemen to the gam-
bling houses of Denver for the protection of said houses by
the city police were guilty of malfeasance in office; and,

"Second: That in failing to cause to be arrested persons
whom they knew to be in open violation of the law they
were guilty of neglect of. duty.

"It is, therefore, for the cause hereinbefore specified, or-
dered this 7th day of March, 1894:

"That Jackson Orr be, and he is hereby removed from the
office of fire commissioner of the city of Denver; and

" D. J. Martin be, and he is hereby removed from the office of excise commissioner of the city of Denver.

"Davis H. Waite,

" Governor of Colorado."

A copy of the order of removal was on March 7, 1894, duly served upon said Orr and Martin.

On March 8, 1894, the said Davis H. Waite, governor aforesaid, at the executive office in the city of Denver, and under his hand, as governor aforesaid, in writing appointed one Samuel D. Barnes as excise commissioner of said city of Denver, vice D. J. Martin removed, and Dennis Mullins to be fire commissioner, vice Jackson Orr removed. Said appointments in writing were in words and figures as follows :

" EXECUTIVE ORDER.

" March 8, 1894.

" Ordered that Samuel D. Barnes of 126 Lincoln avenue, Denver, be and he is hereby appointed Excise Commissioner of the city of Denver for the unexpired term ending on the second Tuesday of April, 1895, vice D. J. Martin removed.

(Signed)    " Davis H. Waite,

" Governor of Colorado."

" EXECUTIVE ORDER.

" March 8, 1894.

" Ordered that Dennis Mullins of 3050 Larimer street, Denver, be and he is hereby appointed Fire Commissioner of the city of Denver for the unexpired term ending on the second Tuesday of April, 1895, vice Jackson Orr removed.

(Signed)    " Davis H. Waite,

" Governor of Colorado."

The answers of respondents contain, among other things, the following :

That respondents as members of the fire and police board " were not guilty of sending special policemen to the gambling houses of Denver for the protection of said houses by the said police, but on the contrary thereof the said special

policemen were sent to the gambling houses of the city of
Denver for the purpose of preserving the public peace, pre-
venting riots and disturbance, preventing minors, intoxicated
persons or others under disability, from frequenting such
houses; to apprehend persons guilty of any disturbance or
breach of the peace, and for the purpose of giving informa-
tion as to the presence and whereabouts of suspicious char-
acters; to ascertain the names of persons frequenting such
houses and carrying them on, and the places where gambling
was carried on at the said city of Denver, with a view to re-
stricting and controlling the said evil and vice in order to
its eventual suppression. Avers howsoever that the said as-
sumed, attempted and pretended removal of this defendant
from the said office was for political reasons and no other;
for that this defendant had refused before that time to remove
from their positions and places members of the police force
and of the fire department of the city of Denver who were .
and long had been faithfully serving in their said positions
and places at request of the said Davis H. Waite, solely be-
cause the said persons were not of the same political faith
and affiliation with the said Davis H. Waite, and had refused
to appoint in the stead of the said persons those of the same
political party, faith and affiliation of the said Davis H.
Waite, which said removals and appointments so requested
by the said Davis H. Waite, this defendant avers, were and
would have been in violation of the provisions of the charter
of the city of Denver; and the defendant avers that the said
attempted and pretended removal of this defendant by the
said Davis H. Waite, for political reasons only as aforesaid,
was in violation of the forty-fifth section of the third article
in the certain act of the general assembly of the state of Colo-
rado, entitled ' An Act to Revise and Amend the Charter of
the City of Denver,' approved April 3, 1893."

SESSION LAWS 1893, P. 172.

" Sec. 45. Immediately upon the passage of this act, and
biennially thereafter, the governor of the state of Colorado

shall, by and with the advice and consent of the Senate ap-
point the fire commissioner, the police commissioner and the
excise commissioner for the term of two years, who shall in
1893 take the places, and shall exercise the powers and per-
form the duties of the fire and police board of the city of
Denver. The governor may in vacation of the Senate, fill
vacancies by appointments in writing filed with the secretary
of state ; and all appointments by the governor shall be made
with power of suspension or removal at any time for cause,
to be stated in writing, but not for political reasons. The
fire commissioner shall be the president of said board. Not
more than two (2) members of said board shall be of the same
political party, and all of said appointments shall be made
to expire on the second (2nd) Tuesday in April."

The information shows that Mullins and Barnes, having
qualified, demanded possession of the offices, and that Orr
and Martin refused to vacate ; thereupon these proceedings
were instituted. The remaining facts sufficiently appear in
the opinion.

Mr. EUGENE ENGLEY, attorney general, Mr. ROBERT W.
STEELE, Mr. PLATT ROGERS, Mr. J. WARNER MILLS and
Mr. THOMAS WARD, JR., for relator.

Messrs. WELLS, TAYLOR & TAYLOR, for respondent.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The taking of original jurisdiction of these proceedings
must not be understood as establishing a precedent. If this
court were to take cognizance of every application within its
original jurisdiction, there would be little time remaining to
devote to appellate business.

We have felt constrained to entertain these original pro-
ceedings because of the disturbed condition of public affairs
incident to the fire and police board controversy. In so do-
ing we have yielded to the fears of others rather than to any

serious apprehensions of our own. While we have been constrained by a desire to speedily allay public anxiety by avoiding the delays of *nisi prius* trials and probable appellate proceedings, it should not be overlooked that the delays thus far have not been confined to the courts.

From the informations filed herein it appears that on January 17, 1894, the governor cited Messrs. Orr and Martin to appear before him to answer the charges preferred against them ; that two days afterwards the evidence was taken upon said charges ; and that seven weeks thereafter, March 7, 1894, the orders of removal were made. During the three weeks following there were legal proceedings in the courts in various forms; but not until Saturday, March 31st, was any application made to this court by which the controversy could be settled and determined; on the Monday following, this court indicated its willingness to take original jurisdiction.

It is true, a question was presented by the governor on March 17, 1894, asking this court to determine upon an *ex parte* statement what persons were entitled to the offices of fire and excise commissioners. To that question and the matters stated in connection with it, this court gave a clear and explicit opinion indicating the remedy based upon the assumption that the facts stated were true. See recent opinion of Mr. Justice Goddard *In re Fire and Excise Commissioners*. But it could not be assumed that such *ex parte* statement could not be controverted, nor that an opinion based thereon might not require modification when the other side should present their cause in court as they had a right to do. It would have been highly improper to have given an unqualified opinion upon such *ex parte* statement. No opinion based upon such statement could have been made to bind the parties contending for official place upon the fire and police board. While the constitution requires this court to " give its *opinion* upon important questions upon solemn occasions when required by the governor," it does not require, nor does the constitution permit, this court to render *judgment* in connection with such opinion. The court may

give its opinion upon the law based upon the facts submitted by the executive, but it cannot render judgment thereon, nor can it, upon such questions, undertake to determine questions of fact. *In re Appropriations*, 13 Colo. 322.

In *In re Irrigation*, 9 Colo. 620, speaking of executive and legislative questions, it was said :

" It could not have been the intention to authorize an *ex parte* adjudication of individual or corporate rights by means of a legislative or executive question ; parties must still litigate their rights in the ordinary and regular course of judicial proceeding."

It is manifest that no decision or judgment affecting the rights or claims of contending parties can be rendered upon an *ex parte* question without violating that fundamental principle of our jurisprudence which guarantees to every person his day in court before judgment is rendered against him. Every *lawyer* and all intelligent citizens understand this principle. As was said by Chief Justice Marshall of the Supreme Court of the United States, more than three quarters of a century ago : " It is a principle of natural justice, which courts are never at liberty to dispense with, unless under the mandate of positive law, that no person shall be condemned unheard, or without an opportunity of being heard." *Meade v. Dep. Marshal of Va.*, 1 Marshall's Dec. 328.

1. In argument counsel expressed much solicitude lest this court should trespass upon the executive rights and powers of the governor. There is no occasion for such anxiety ; this court has always been careful not to encroach upon the province of other departments of the government; it has always recognized them as co-ordinate and independent in their respective spheres under the constitution and laws of the state. In the present controversy no constitutional rights of the executive are involved; neither the power of appointing nor of removing commissioners of the fire and police board, is in any manner vested in the governor by the constitution; his power to make such appointments and removals depends entirely upon a statute enacted by the

legislature; and it certainly is the proper province of the judiciary to construe and apply statutes in case of actual litigation arising under such statutes. Cooley's Const. Lim., pp. 108, 113.

This controversy affords a practical illustration of the workings of our governmental system : The legislature makes the law providing for the appointment and removal of members of the fire and police board, vesting the power of appointment and removal in the governor ; the governor selects and appoints the officers; he makes orders of removal and appointments to fill the vacancies; the courts have nothing to do with making the law, nor with making the orders of appointment and removal; but when such orders are questioned, and there arises a controversy resulting in actual litigation concerning conflicting claims to such offices, then the courts which have had nothing to do with making the law or with making the orders of removal and appointment, are the proper tribunals to construe the law made by the legislature, and apply the same to the orders made by the governor, and thus pass upon and determine between the rival claimants to such offices. Thus, by a division of governmental powers, the interests of the public and the claims of the contending parties are more thoroughly and impartially considered than as though the whole power were lodged in a single department; and thus there is a peaceable solution of the controversy.

2. Mr. Justice Cooley clearly states the American doctrine upon this subject as follows :

"The several departments of the government are equal in dignity and of co-ordinate authority, and neither can subject the other to its jurisdiction, or strip it of any portion of its constitutional powers. But the judiciary is the final authority in the construction of the constitution and the laws, and its construction should be received and followed by the other departments. This results from the nature of its jurisdiction; questions of construction arise in legal controver-

sies, and are determined by the courts, and when determined the courts have power to give effect to their conclusions.

   *    *    *    *    *    *    *    *

"Within the sphere of his authority under the constitution the executive is independent, and judicial process cannot reach him. But when he exceeds his authority, or usurps that which belongs to one of the other departments, his orders, commands, or warrants protect no one, and his agents become personally responsible for their acts. The check of the courts, therefore, consists in their ability to keep the executive within the sphere of his authority by refusing to give the sanction of law to whatever he may do beyond it, and by holding the agents and instruments of his unlawful action to strict accountability.

"The executive can have no corresponding authority to pass upon the validity of either legislative or judicial action. His judgment of proposed legislation may be expressed in his veto, but if that is overruled the executive is as much bound as is any private citizen. He is also equally concluded by the judgment of a competent court, and it may become his duty as executive to assist in enforcing a judgment he believes erroneous, should enforcement by the ordinary process of the court and by its own officers become impossible." Cooley's Principles of Constitutional Law, pp. 139, 157; see also, 1 Story on the Constitution, § 521; and 1 Blackstone's Commentaries, pp. 146, 269; also *Greenwood Cemetery Co. v. Routt*, 17 Colo. 156, and authorities there cited.

The power of appointing and making changes in the membership of the fire and police board was conferred upon the governor by the charter of the city of Denver as amended in 1893. The legislature was not obliged to confer such power upon the governor; it might have conferred the power upon the mayor, the city council, or some other body; or it might have provided that the people should elect the members of the fire and police board. The power conferred upon the governor being purely statutory, its extent and limits are to be ascertained and judicially determined by a careful con-

sideration of the terms of the statute.   Mechem on Public
Officers, §§ 447–456.

3. In *Trimble v. The People ex rel. Phelps, ante,* 187,
Chief Justice Hayt, delivering the opinion of the court, said :
" Under the statute the cause that may be sufficient to war-
rant removal is to be determined by the governor." The
same opinion further declares : " In considering removals
under this act we must assume that the lawmaking body was
of the opinion that the requirement that the cause of removal
should be stated in writing, was the only check necessary to
prevent an arbitrary and oppressive abuse of the power."

The opinion in the *Trimble case* is authority also for the
doctrine that the sufficiency of the cause of removal is a
matter to be determined by the governor, and that the cause
need not be such as would have weight with the courts—in
short, that the governor is at liberty to remove for any cause
to which he gives the sanction of his name in writing, pro-
vided such removal be not made for political reasons.   The
opinion in the *Trimble case* concludes thus : " It is the duty
of the courts to uphold the executive power as it has been
conferred by the legislature."

After much argument and consideration our confidence in
the correctness of the views expressed in the *Trimble case*
remains unshaken.   We are aware now, as we were when
that case was decided, that there are judicial decisions which,
if followed, would have led to the conclusion that the re-
moval of Phelps was invalid ; but we chose to follow what
we then considered, and what we now consider, the better
reasoned opinions.

By pleadings duly filed the parties have set forth their re-
spective claims to the offices of fire and excise commission-
ers respectively.   It is not denied that in making the orders
of removal the governor stated the cause therefor in writing.
Respondents do not question the regularity of the acts of the
governor in making such orders, but by their answers they do
question his good faith.

Without antagonizing the *Trimble* opinion, respondents

claim that it is still open to them to show that the orders for their removal were made for political reasons, and for no other cause.   By their answers they allege, in substance, that all that they did or omitted to do in respect to gambling houses (the cause stated in writing for their removal) was done " with the knowledge and approval " of the governor ; they allege further, in effect, that the motive which prompted the governor to order their removal was not their action in respect to the offense of gambling, but that he made such orders for political reasons ; they allege, in substance, that the governor had requested respondents to remove members from the police force and from the fire department of the city who had been for a long time faithfully serving in such positions ; that they were thus requested to remove such members because they were not of the governor's political faith and affiliation ; and that they were requested to appoint in the place of the members thus to be removed persons who were of the same party faith and affiliation as the governor.   Respondents allege further that they refused to comply with the governor's requests, because such requests were in violation of the charter of the city, and that because of their refusal the governor made the order for their removal, and for no other reason.   The answers are sworn to by respondents. ·

It must be admitted that the matters set forth in the answers of respondents are of a serious nature.   The truth of the matters alleged in the answers is not denied in these proceedings, but motions are interposed in behalf of the new appointees claiming that the matters and things thus alleged are immaterial, irrelevant and insufficient in law ; the motions pray judgment that respondents Orr and Martin be ousted, and that the new appointees, Mullins and Barnes, be declared entitled to hold the offices of fire and excise commissioners respectively.   Thus an issue of law is presented, and the jurisdiction of the court is invoked to determine what persons are entitled to hold and exercise the powers and duties of said offices.

Stated in plain language, the question to be determined is :

Have respondents the legal right to allege and prove in these proceedings that the real cause of the orders for their removal was other and different from the cause stated in writing by the governor ; that is, have they the right to show that the orders for their removal were really made for political reasons, and for no other cause ? The question is not free from difficulty ; it is a question that respondents had a right to have judicially determined in an action to which they themselves should be parties.

4. The matters set forth in respondents' answers are especially forcible in view of the words of *limitation* inserted in the charter of 1893 forbidding the governor to remove " for political reasons ; " these words were not in the former charter ; the language of the charter of 1891 was : " The governor shall at all times have power and authority to revoke the appointment of any member of said board for good and sufficient causes to be specifically stated in such revocation." Session Laws 1891, p. 65.

It is contended that some effect must be given to these additional words in the act of 1893 forbidding the governor to remove for political reasons. It is insisted that such words were added for a purpose ; and this, according to well settled rules of statutory construction, cannot be denied. That the additional words were inserted for a purpose is plain ; and what the purpose was, is also plain. The purpose was that the fire and police department of the city should not be used to advance the interests of any political party, or the political ambition of any individual or set of individuals. The fire and police departments should be maintained for their efficiency in protecting the interests of the people, and for no other purpose. But while it is easy to perceive the purpose of the additional words in the charter of 1893 forbidding removals for political reasons, it is not so easy to determine how to give practical effect to such additional words.

5. It is a presumption of law that every public officer does his duty. This presumption is especially strong in the case

of the governor—the chief executive officer of an independent state. If any court should attempt to institute an inquiry into the reasons or motives which have controlled the official action of the governor, great difficulties would be encountered. These difficulties are all the greater in cases where improper political motives are charged; and this, for the reason that the persons making such charges may themselves be actuated by improper political motives. Charges of improper motives are easily made, are often untrue, and are always hard to, prove. When such charges are made in respect to an act not wrong in itself—an act expressly authorized for cause to be determined by the officer performing the act—an act which is wrong only when prompted by an improper reason. or motive,—it is practically impossible to determine judicially that the act done was illegal, on the sole ground that it was prompted by an improper motive or unlawful reason ; and this is especially true where the officer is required by law to state in writing the cause for his act, and his written statement shows no unlawful reason.

There are other reasons which make against the claim of respondents to have the order for their removal declared invalid upon evidence other than the written statement made by the governor. When the legislature provided that the governor might remove members of the fire and police board for cause to be stated in writing, but not for political reasons, it was doubtless considered that such removals might be required to be summarily made. In reason it could not have been contemplated that the cause for removal stated in writing might be overthrown by other evidence, showing that such order was made for political reasons, and not for the written cause stated by the governor. Such a course would involve much delay—perhaps a trial by jury with right of appeal—and thus the wheels of municipal government would be blocked in a manner entirely inconsistent with the control of the police and fire department of a great city. If the legislature had intended such a course to be pursued, a different wording of the statute would undoubtedly have been

VOL. XIX—37

adopted. If it was contemplated that the cause of removal should remain an open question to be litigated and determined upon evidence *in pais*, why did the legislature require the governor to preserve written evidence of it?

6. It being shown by the informations herein and not denied, that the governor made the orders for the removal of respondents as members of the fire and police board, and stated in writing the cause for such orders, our conclusion is, that it is not a sufficient answer to the informations to allege and offer to show, by evidence other than the written statement of the governor, that the real cause for making such orders was other and different from the cause so stated in writing; in other words, that an order of removal under section 45 of the charter and the cause therefor stated in writing by the governor, when regularly made, must be held the exclusive and conclusive proof of the cause for making such order.

It follows that when the proceedings before the governor, including the written statement showing the order and cause for removal, are regular and valid upon their face, the words of limitation forbidding removals " for political reasons " cannot, as the statute now stands, be given practical effect, except as they may operate upon the conscience of the executive, and so restrain and control his official conduct.

We have examined the many authorities cited by counsel for the respective parties. Unfortunately none of them are based upon statutes exactly like ours; but the better reasoned decisions, based upon statutes somewhat analogous, support the conclusion at which we have arrived. In addition to the authorities cited in the *Trimble-Phelps case* we cite the following. In citing authorities it is not to be understood that all the views expressed therein are necessarily approved. Mechem on Public Officers, chap. 6 ; Throop on Public Officers, § 396 ; Cooley's Const. Lim. *187 ; 25 Am. Law Review, p. 228. *State ex rel. Lewis v. Board of Public Works*, (N. J. 1889) 17 Atl. Rep. 112; *State ex rel. v. Lamentia*, 33 La. Ann. 446 ; *State ex rel. Gill v. Common Council*, 9 Wis. 254; *De Vault v. Mayor of Camden*, 48 N. J. 433 ; *Ayers v. Newark*,

49 N. J. 170; *Dullam v. Willson,* 53 Mich. 392; *People ex rel. v. Therrien,* 45 N. W. Rep. 78; *State ex rel. v. Smith,* 52 N. W. Rep. 700.

The informations do not pray that any fine be imposed upon respondents for unlawfully holding the offices in question; hence, we need not determine whether section 295 of the Code in respect to fines is applicable to original proceedings in this court.

The answers of respondents cannot be held sufficient in law or available as a defense in these proceedings. Judgments will, therefore, be entered that respondents be excluded from the offices of fire and excise commissioners respectively, and that they deliver possession of such offices, together with all the books, records, papers and paraphernalia of said offices and other property pertaining thereto, to the new appointees, Mullins and Barnes, respectively, on or before twelve o'clock noon, Tuesday, April 17, 1894; and that respondents pay the costs of these proceedings respectively to be taxed, and that writs of ouster and execution may issue therefor at or after the time last specified.

*Judgment of ouster.*