THE PEOPLE on the relation of GAMBLING *a.* CHOL-WELL and others, POLICE COMMISSIONERS.

*Supreme Court, First District ; Special Term, August, 1857. Again, October, 1857.*

CERTIORARI.—HOW ADDRESSED.—AMENDMENT.

On an application for a certiorari to remove into the Supreme Court proceedings of trial and dismissal of members of the police force, the papers disclosing doubt as to the regularity of the proceedings,—*Held,* that their regularity ought to be established beyond all question, and a reference was the proper course to ascertain the facts.

A writ of certiorari to bring proceedings of the Board of Police before the Supreme Court should be addressed to the Board, and it is defective if addressed to all the members of the Board, individually, as commissioners.

* Present, Davies, C. J., Clerke and Sutherland, JJ.

.Such a writ may be amended even after a return made, and a new return directed to be filed.*

Application for a writ of certiorari to review the decision of the Police Commissioners, removing the relator from the office of policeman.

The relator's affidavit was as follows:

*City and county of New York, ss.*—Richard Gambling, of this city, county, and State aforesaid, residing at No. 179 West Sixteenth street, in said city, being duly sworn, says that heretofore, to wit, on the 11th of April, 1855, he was duly appointed to the office of policeman for the 16th patrol district of the said city, by Fernando Wood, Jas. M. Smith, Jr., and Sidney H. Stuart, then commissioners of police in and for said city, duly authorized to make such appointment; that this deponent still holds his warrant or commission of appointment from said commissioners (a copy of which appointment is hereto annexed); that ever since said appointment, and until on or about the 3d of ' July, 1857, this deponent has continued to do duty as such policeman in said city, and in the 16th patrol district thereof, and has well and faithfully, during all that time, discharged the duties of such policeman, and as patrolman. That, by an act of the Legislature of said State, entitled "An act to establish a Metropolitan Police District, and to provide for the government thereof," passed April 15th, 1857, and pursuant to the provisions thereof, this deponent became and was continued to be a policeman and patrolman in said metropolitan police till, as hereinafter mentioned, this deponent was, as he is informed and believes, unjustly and without authority dismissed and removed therefrom; that on or about the 23d of June, 1857, Simeon Draper, James W. Nye, Jacob Cholwell, James Bowen, and James T. Stranahan, or a majority thereof, then acting or assuming to act as a Board of Police Commissioners, under and by virtue of said act, did, as this deponent is informed and believes, but irregularly and without authority, dismiss, and discharge, and remove this deponent from his said office of policeman; that at no time previous to said dismissal, discharge, and removal, had any

* Compare The People *on rel.* Murphy *a.* The Metropolitan Police Commissioners (5 *Ante,* 241).

written charges been preferred against this deponent to the Board of Police constituted by said act, to this deponent's knowledge, nor had he been informed of any such charges, as required by the 7th section of said act, nor had an opportunity been offered this deponent of being heard in his own defence to any charges that may have been preferred against him, as required by said section; nor had this deponent, previous to his discharge as aforesaid, received or been served with any notice whatever that any charges had been preferred against him as such policeman; nor had he received or been served with any notice of any time when, or place where, he might appear and defend himself against any charges which may have been preferred against him, although he was all the time a resident of said city, and almost daily on duty as a patrolman in the 16th patrol district in said city, and daily at his residence in said city.

This deponent therefore insists, that he has been unjustly, improperly, and without jurisdiction or authority on the part of said Board of Metropolitan Police Commissioners for that purpose, and in violation of the various provisions of said act, and especially in violation of the 7th section thereof, dismissed and discharged from his said office, although he has been, and still is, ready and willing to do and perform faithfully all the duties thereof.

Therefore this deponent prays that a writ of *certiorari* may be issued out of the Supreme Court, directed to said metropolitan police commissioners, directing them to return all the proceedings had and taken by and before them in relation to the dismissal, discharge, and removal by them, or a majority or any of them, of this deponent from his said office of policeman.

[*Jurat.*]                                        RICHARD GAMBLING.


The affidavits read in opposition to the application were to the effect that on the 19th of June, 1857, charges against the rela tor of wilful disobedience of orders were preferred before the Board of Police for the Metropolitan Police District, and that his trial on the charges was set down for the 23d of June; that a due notice of the charges and trial was prepared by the clerk of the Board for service on the relator; and that, by reference to the minutes of the Board, it appeared that proof of the service of the notice on the relator was made to the Board in the

proceedings on the charges. That ever since a time before the making of the charges, the relator had refused to recognize the authority of the Board, and had not acted as patrolman under their regulations, excepting that, for about ten days before the present application, he had daily reported himself for duty. It was also stated that the relator had made, and then had pending before the Board, an application for reappointment.

*Luman Sherwood,* for the relator.—I. In this State all final adjudications of inferior courts not of record, and of persons invested with power to decide on the property and rights of the citizen, who act in a summary way or in a new course, different from the law, are examinable by the Supreme Court upon a common law certiorari. (Stone *v.* The Mayor, &c., of New York, 25 *Wend.,* 156 ; opinion of Paige, Senator, *Ib.,* 164–173 ; 2 *Cai.,* 182 ; Leroy *v.* The Mayor of New York, 209, R. 430, 438.)

II. The 7th section of the act to establish a metropolitan police provides " that no person shall be removed therefrom except *upon written charges preferred* against him to the Board of Police, and *after an opportunity shall have been afforded him of being heard in his defence.*" Hence, if the commissioners acted in the case of Gambling and discharged him, they did so not only *irregularly,* but *without jurisdiction,* if, as he alleges, they did it without having served him with written charges, and without giving him notice of time and place to be heard in his defence (2 *Laws of* 1857, 200).

III. When any act is required by statute to be done by a court or officer before proceeding to do other acts, if the act so required to be done be not first performed, the other acts are both irregular and *without jurisdiction.*

IV. The court has uniformly held that it has jurisdiction, by common law *certiorari,* to review proceedings of all subordinate tribunals, as to their jurisdiction and all questions which relate to the regularity of their proceedings, and all questions of law which arise on the face of the record, or of the proceedings and orders which are in the nature of records. (Stone *v.* The Mayor, &c., of New York, 25 *Wend.,* 167 ; Tallman *v.* Bigelow, 10 *Wend.,* 420.)

V. The writ should, in the exercise of a sound discretion, be

allowed in this case for the following reasons: 1. The commissioners' acts were irregular. 2. They have not done what, by the statute, was necessary to give them jurisdiction to remove. 3. The applicant for the writ has been deprived of his office and its salary, to which the law gave him a right during good behavior. 4. He has no adequate remedy but by this writ. 5. If the court should refuse the writ, it would establish a precedent which would enable the commissioners to discharge the whole police force and appoint a new one at pleasure, and thus set at defiance the law intended to protect policemen, and to give them a permanent subsistence, as a compensation for the dangers they incur.

*A. J. Vanderpoel*, and *William Curtis Noyes*, in opposition.—I. The writ of *certiorari* will not lie to the police commissioners to review the action of the Board of Police in the matter of appointments and removals. The duties of the board are executive or administrative, and not judicial in their nature. These duties are chiefly defined in the 5th section of the act under which the board was organized. By the 6th section they are authorized to pass, from time to time, rules and regulations, for the more proper government and discipline of its subordinate officers. The power to appoint and remove is merely incidental to the more effective execution of the duties conferred upon them. The acts which the board are authorized to perform, all call for the exercise of opinion and judgment, but they are not, therefore, judicial acts. Else, every executive officer required to exercise a discretion in the performance of his duties would be said to exercise judicial powers. The fact that no precedent can be found for a writ in a case like the present, is entitled to much consideration.

A similar power of removal, upon charges, has long existed in the cases of sheriffs, coroners, county clerks, registers of New York, &c. (1 *Rev. Stats.*, 123, § 44). This power is conferred not on the judicial, but on the executive arm. Yet no instance can be found where the courts have attempted to supervise the jurisdiction or acts of the executive in such cases. Although he can only remove on charges, and after an opportunity has been given to the officer to be heard in his defence, his duties have never been deemed judicial. Yet the same argument which

would sustain or sanction this proposed writ to the commissioners, would sustain a like writ to the governor in cases of removal by him. So a *certiorari* could issue to the Senate to review its action in the removal of judicial officers (*Const.*, *Art.* 6, § 11). The constitution has declared the character of acts of this nature by vesting the power in the executive and legislative branches of the government.

II. The Legislature have, in the several police acts of 1846, 1853, and 1857, evinced their determination to rest the largest discretion, in the matter of removals, in those controlling the police force. The rules and regulations for the more proper government and discipline of the subordinate officers are to be prescribed by the superior officers. The qualifications, enumeration and distribution of duties, mode of trial, and removal from office of the force, are to be defined and prescribed by the board. The slightest breach of the rules and regulations prescribed by the board is cause of removal (*Act of* 1857, §§ 5, 6, and 7; People *v.* Warner, 2 *Den.*, 272).

III. In those cases where the court have the power to award a common-law *certiorari*, it rests in their discretion to grant or withhold it. It is never a writ of right but of grace, except in certain cases when demanded by the people. It is seldom granted when the party has another remedy (15 *Wend.*, 198, 206; State *v.* Anderson, 1 *Coxe* (*N. J.*) *R.*, 318; Ex parte Adams, 4 *Pick.*, 25; Inhabitants of Freeton *v.* County Commissioners, 9 *Pick.*, 46). This is not a case in which the precedent should be established. The Board would be seriously embarrassed in the discharge of their duties, and their action, so essential to the safety and security of the citizen, would frequently be paralyzed, if each appointment and removal was subject to review by the judicial tribunals.

IV. The affidavits show that the applicant, for more than a month, set at defiance the powers and authority of this board; and this after the act under which the board was organized had been declared and adjudged constitutional by the Supreme Court. They also show that written charges were preferred to said board against him, and that he was allowed an opportunity of being heard in his defence. The applicant does not claim that the board did not have before them proof of the charges, and of the time and place of trial.

V. The question of jurisdiction can alone be raised on common law *certiorari* (The People *v.* The City of Rochester, 21 *Barb.*, 656). Even in cases of inferior courts, the courts will intend in favor of certain acts essential to jurisdiction, unless the contrary appear. (See the cases cited by Cowen J., 21 *Wend.*, 47.)

DAVIES, J.—On the 13th of April, 1855, the petitioner was appointed by the then Board of Police Commissioners to the office of policeman of said city.

By section 3d of article III. of the act of April 13th, 1853, in force at the time of the petitioner's appointment, it was provided that " the members of the police department appointed after this act shall have gone into effect, shall hold their offices during good behavior, and shall only be removed for cause, as hereinafter provided."

By section 4 of that act, it was provided that " in case of suspension and complaint, notice to the accused shall be given, to afford him an opportunity to be heard in his defence. The accused party may, in all cases, appear by counsel, and compel the attendance of witnesses in his behalf." The Board of Commissioners, after the examination of witnesses, under oath or affirmation upon the charges, and in defence, might, for cause, remove the accused from office.

A person once appointed a policeman, after this act took effect, could only be removed in the manner therein prescribed.

On the 15th of April, 1857, an act was passed " to establish a Metropolitan Police District, and to provide for the government thereof."

Section 6 of this act declared that the patrol force of the county of New York, until otherwise provided for, shall be of the number of patrolmen then existing by law in the city of New York.

By this provision, the police force in existence in the city of New York, at the time of the passage of that act, were thus incorporated with the police force thus organized, and accepted as the patrol force for the county of New York, as authorized by said act.

By force of these provisions the petitioner became one of the patrol force of the county of New York, as organized by this act. The seventh section of this act provides that no person

shall be removed from office, "except upon written charges, preferred against him to the Board of Police, and after an opportunity shall have been afforded him of being heard in his defence." The same section declares that the mode of trial and removal from office of each officer of the said police force shall be particularly defined and prescribed by rules and regulations of the Board of Police.

In pursuance of the authority thus conferred, the Board of Police have adopted rules and regulations in reference to the removal of the members of the police force.

The sixth rule requires that charges preferred against any member of the police force must be in writing, and unless presented by one of the superintendents or inspectors, must be sworn to; and all charges are to be filed with the chief clerk.

The seventh regulation requires that when charges are filed, the chief clerk shall notify the person complained of to call and examine the same. And the person complained of, within two days thereafter, must answer the same to the clerk, or file his answer thereto with him.

The petitioner alleges that he was removed from office on the 23d day of June last, without any written charges being presented against him, and without any opportunity being afforded to him to be heard in his defence. It appears from the affidavits on the part of the commissioners, that on the 19th day of June last, written charges were preferred against the petitioner by one of the inspectors. It also appears from said affidavits, that the chief clerk of the board prepared a notice to the petitioner that said charges had been preferred against him, with a specification thereof, and notice of the time and place, when and where said Gambling should appear before said board for trial on said charges, and said clerk deposes that he directed service to be made of the same on said Gambling.

The clerk further deposed that by reference to the minutes of said board, upon the trial of said Gambling, it appears that proof was made to said board of the service of said notice on said Gambling.

The board correctly apprehended their duty in directing notice to be given to the petitioner of the charges preferred against him, that he might have an opportunity of being heard in his defence. If such opportunity has been given him, it puts an

end to this application, for this court has no power to review the adjudication of the commissioners upon its merits. If they have taken the necessary steps to acquire jurisdiction, their action is final in the mater.

But the petitioner swears positively that he had no notice of the charges preferred against him, nor any opportunity of being heard in his defence, and the affidavit of the chief clerk does not contradict this, except by stating that it appears from the minutes that proof was made that such notice had been given. If the notice was given and the petitioner had an opportunity of being heard in his defence, it ought certainly to be established beyond all controversy.

As it is the only point upon which doubt is thrown by the papers before me, I think it proper, in view of the rights of the petitioner, and the public interests involved, to direct that a reference be ordered to James R. Whiting, Esq., to ascertain and report whether the petitioner had notice of the charges preferred against him, and of the time and place for the trial thereof, and whether an opportunity has been afforded him of being heard in his defence, and that he report with all convenient speed.

*August*, 1857. Report of the referee.

The referee reported, in substance, that Wm. Sutherland, a duly appointed policeman, who was, on the 19th of June, 1857, acting in the capacity of an inspector and special aid to Daniel Carpenter, the deputy superintendent of police, did, on the 19th of June, 1857, cause to be served upon Richard Gambling, personally, a notice in writing, requiring Gambling to report himself for patrol duty at the station-house, Knickerbocker Hall, corner of Twenty-third street and Eighth avenue, at sunset of that day; that Gambling did not report himself, and on the night of the 19th or morning of the 20th of June, Sutherland presented charges in writing against Gambling and others; that a notice of such written charges against Gambling was not served upon him personally, but the messenger left the notice with one McKee, who had been appointed captain of the Sixteenth precinct by the former commissioners, and was then acting as such, and under whose command the said Gambling then was; that McKee did not deliver the notice to Gambling, and Gambling did not report himself to the superintendent of the

Metropolitan Police for duty until after the 23d of June; that Gambling had been ill and off duty from about the 1st of April until after the 23d of June.

Upon the coming in of this report Mr. Justice Davies allowed the writ of certiorari, which was in the following form:

The People of the State of New York.—To Jacob Cholwell, James W. Nye, Jas. T. Stranahan, Simeon Draper, James Bowen, Fernando Wood, and Samuel S. Powell, Commissioners of Police of the Metropolitan Police District.

Whereas, we have understood that lately, before you, or a majority of you, composing, at the time, a Board of Police of the Metropolitan Police District, pursuant to an act entitled, "An Act to establish a Metropolitan Police District, and to provide for the government thereof," passed April 15th, 1857, such proceedings have been had that you, or a majority of you, have irregularly, and without authority or jurisdiction in the premises, discharged, dismissed, and removed from office, Richard Gambling, a policeman, duly appointed, and holding office in the Sixteenth patrol district, or precinct, in the city of New York; and whereas it is alleged by the said Gambling that your proceedings have been irregular, without authority and in violation of the provisions of the act aforesaid, and especially in violation of the 7th section thereof, and we, being willing, for certain reasons, that all the proceedings concerning said dismissal, discharge, and removal from office of said Richard Gambling, before you remaining, with all the proceedings thereto appertaining, should be certified and returned by you into our Supreme Court, before our justices thereof, at a general term of said court, to be held in the City Hall, in the city of New York, on the       day of August, 1857, at 10 o'clock A. M. of that day,—Do command you that you certify and return into our Supreme Court, before our said justices thereof, at a general term of said court, to be held, &c., all the proceedings concerning the said dismissal, discharge, and removal from office of the said Richard Gambling, had and taken by and remaining before you, so that our said justices may further act thereon, as of right and according to law ought to be done, and have you then there this writ.

Witness, &c.

*October*, 1857. Amendment of the writ.

The return which was made to the writ was made and signed by Messrs. Nye, Stranahan, and Bowen, three of the commissioners.

*Luman Sherwood*, for the relator, moved to dismiss the return to the certiorari, on the ground that it was made by only three commissioners, who were not a majority of the board. He read affidavits of Mayors Wood and Powell, and Mr. Cholwell, stating that the writ of certiorari was never laid before the board, and they were never notified to take any part in making the return. And, in support of the motion, he urged that the board consisted of seven members; that, by law, four were required to form a quorum to transact such business as making this return; and that, since only three acted in making it, the return was insufficient.

*Wm. Curtis Noyes*, in opposition.—The writ should be quashed. It is directed to seven persons, designated as police commissioners, whereas only five of that number were commissioners. The police act reads, " the governor shall appoint *five* commissioners of police; these, together with the mayors of New York and Brooklyn, shall constitute a Board of Police." The two mayors are not police commissioners, but members of the Board of Police when in session. If the writ had been directed to the Board of Police, it would have included the mayors. But it is not so directed. The writ must either be quashed, or be considered as directed to the five commissioners, and the two mayors rejected as surplusage. The three gentlemen who signed the returns were a majority of such commissioners, and were a quorum to transact such business. If the writ is intended to be directed to the Board of Police, it must be quashed; if it is directed to the police commissioners, the return is valid.

DAVIES, J. (orally.)—The writ of certiorari was improperly directed. Instead of the seven gentlemen being designated as " Police Commissioners," they should have been called " Board of Police." The writ must be so amended. The return to the writ is defective, as not being made by a majority of the board. Let a new return be filed to the amended writ before November 1.