STATE OF MISSOURI, EX REL. JOHN W. CAMPBELL *v*. POLICE COMMISSIONERS ET AL., Respondents,

November 6, 1883.

1. POWER OF POLICE COMMISSIONERS. — The power of the police commissioners of St. Louis to appoint a chief of police "for such time as the board shall determine" does not include the power to discharge and appoint a chief of police at their pleasure.

2. —— An appointment of a chief of police without specifying the duration of the term is not void and the commissioners can not remove such an appointee at their pleasure.

3. —— A chief of police can not be removed by the commissioners before the expiration of his term of office, except for specified causes.

4. CHIEF OF POLICE — TERM OF OFFICE. — The statutory limitation of the term of office of a chief of police is four years where the term of his tenure is not otherwise fixed by the order of his appointment.

5. —— PRESUMPTIONS — CERTIORARI. — In proceedings by *certiorari* it will not be presumed from a record which shows merely the removal of an officer that such removal was for cause shown.

6. —— PRACTICE. — In such a proceeding such a record will be quashed.

WRIT of *Certiorari*.

*Record quashed.*

HENRY HITCHCOCK, for the relator: In a proceeding by *certiorari*, the only question is, whether there is error in the record of the inferior tribunal brought up by the writ.

Nothing outside of the record can be considered for the purpose of determining that question. — *The State ex rel. v. Powers*, 68 Mo. 323; *Hannibal, etc., R. Co. v. State Board*, 64 Mo. 308. If want of jurisdiction or irregularity appears from the record of the proceedings below they will be quashed. — *Owens v. Andrew County*, 49 Mo. 372; *The State ex rel. v. Dowling*, 50 Mo. 136; *Mullins v. The People*, 24 N. Y. 399 (affirmed 40 N. Y. 154); *Gambling v. Cholwell*, 6 Abb. Pr. 151. Where a statute requires that a removal from office must be " for cause," it necessarily implies that the " cause " must be " some dereliction or general neglect of duty or incapacity to perform the duties, or some delinquency affecting his general character and his fitness." — *The People ex rel. v. The Fire Commissioners*, 72 N. Y. 445–449; *The People ex rel. v. Nichols*, 79 N. Y. 582–588; *Murdock v. The Trustees*, 12 Pick. 244, 263; 1 Dillon on Mun. Corp. (3d ed.), sects. 250, 253, 255. Statutes conferring upon inferior tribunals a power even of summary proceeding, are to be strictly construed, " and will not be held to deprive one of a regular trial by due course of legal proceedings if any other construction can be given them." — *Owens v. Andrew County*, 49 Mo. 378; *The People ex rel. v. The Mayor*, 19 Hun, 441; 1 Dillon on Mun. Corp., sect. 253.

John G. Chandler, for the relator: The removal must be for cause. — *Ex parte Nichols*, 57 How. Pr. 395; *The People v. Cooper*, 57 How. Pr. 416; 19 Hun, 441; *The People v. The Fire Commissioners*, 72 N. Y. 445; *The People v. The Board of Police*, 39 N. Y. 506. " The proceedings of trial and dismissal of members of police force should show regularity beyond doubt." — *Gambling v. Cholwell*, 6 Abb. Pr. 151. In proceedings by *certiorari* the court can not look beyond the record certified. — *The State v. Powers*, 68 Mo. 320; *Emery v. Brann*, 67 Mo. 39; *Hannibal, etc., R. Co. v. The State Board*, 64 Mo. 294; *The People v. The Board of Police*, 69 N. Y. 39.

KRUM & JONAS, for the respondents: The power of removal is incidental to that of appointment where the tenure of office is not fixed. —*The People ex rel.* v. *Higgins*, 15 Ill. 110. And the cause of removal need not be assigned. —*Keenan* v. *Perry*, 24 Texas, 259; *The People* v. *Stout*, 19 How. 171.

LEVERETT BELL, for the respondents.

LEWIS, P. J., delivered the opinion of the court.

The return upon a writ of *certiorari* issued from this court and directed to the police commissioners of the city of St. Louis and each of them, by name, contains " a full and complete transcript of the records and proceedings of said board, touching the removal of John W. Campbell as chief of police." From this transcript it appears that on June 8, 1881, the resignation of James McDonough, as chief of police, was tendered and accepted, and Captain Ferd. B. Kennett was appointed to the same office, " from and after said date." No term of service was annexed to this appointment, nor was there any in the cases of those which followed. That on August 8, 1882, Kennett's resignation was tendered and accepted, and, upon an election held to fill the vacancy, John W. Campbell was " declared duly elected chief of police of the city of St. Louis." That on April 10, 1883, at a regular meeting of the board " on motion John W. Campbell was continued chief of police." That on October 9, 1883, the board, by a majority vote, adopted a resolution in these words: " *Resolved*, That the order of the board of April 10, 1883, continuing John W. Campbell as chief of police, be and is hereby rescinded, and that the office of chief of police be declared vacant." The return contains also a copy of rule 5, of the standing rules or by-laws of the board, as follows: —

" Charges against members of the police force must be submitted in writing, and when not preferred by a commissioner, the chief of police, a captain or sergeant, they must

be certified by the affidavit of the complainant or informer.''

If, as the relator claims, the resolution of October 9, 1883, was adopted without authority of law, and in violation of express legal provisions, that action of the board must be adjudged void, and its attempted removal of the relator from his office, a nullity. The whole issue before us must be determined by an application of the tests of law to the face of the proceedings, as they appear in the return.

The statutory provisions now in force and deemed material to the present inquiry are the following: Section 2, Chapter VI., of the laws specially applicable to the city of St. Louis, Revised Statutes, page 1528, establishes a board of five police commissioners, whose official tenure and duties are defined in that and succeeding sections. The law proceeds: —

"Sect. 6. To enable the said board to perform the duties imposed upon them, they are hereby authorized and required, as speedily as may be, to appoint, enroll and employ a permanent police force for the city of St. Louis, which they will equip and arm as they may judge necessary. * * * The policemen shall be employed to serve four years, and be subject to removal only for cause, after a hearing by the board, who are hereby invested with exclusive jurisdiction in the premises. Any policeman whose term of service shall expire, and who, during his appointment, shall have faithfully performed his duty, shall, if otherwise qualified, be preferred by the board in making their new appointments.

"Sect. 7. The officers of police shall be as follows: One chief of police, who shall give bond with security in the penal sum of $20,000 for the faithful performance of his duties; three captains, three lieutenants, not exceeding twelve sergeants and four turnkeys; they shall be appointed by the board for such time as the board shall determine, and be subject to removal by the board for cause.''

" SECT. 11. The board of police are hereby authorized to make all such rules and regulations, not inconsistent with this act, as they may judge necessary for the appointment, employment, uniforming, discipline, trial, and government of the police." &ast; &ast; &ast;

Section 2, of the same act, contains the following provision : " Before entering upon the duties of their said office the said commissioners and the said mayor shall take and subscribe before the judge of the circuit court of St. Louis county, or the clerk thereof, the oath or affirmation prescribed by the constitution of the state of Missouri, and shall also take and subscribe before the same judge or clerk the further oath or affirmation that, in any and every appointment or removal to be by them made to or from the police force created and to be organized by them under this act, they will, in no case and under no pretext, appoint or remove any policeman or officer of police or other person under them on account of the political opinions of such policeman, officer or other person, or for any other cause or reason than the fitness or unfitness of such person, in the best judgment of said commissioners, for the place to which he shall be appointed or from which he shall be removed."

For the relator it is assumed that, under these statutory provisions, the board had no lawful authority to remove the chief except " for cause," that is for some cause touching his fidelity or capacity or fitness or unfitness to hold the office and discharge its duties. That, inasmuch as the record of proceedings does not show that any such cause existed, or was even alleged or pretended, it results as a legal conclusion, that the removal was made or attempted without cause and was therefore void. For the commissioners it is contended that the power to appoint " for such time as the board shall determine " is equivalent to a power of investiture during the pleasure of the board. That the words " subject to removal by the board for cause," do not convey an exclusive intendment, but are

cumulative of a power, coupled with a duty of removal, additional to that which may be exercised upon mere volition. That, even if this be not the meaning of the statute, the fact that the office was conferred upon the relator, without any specification of its term or duration, made it an appointment for and during the pleasure of the appointing power, and the removal was therefore valid, whether any cause existed or not.

It is not disputed that the power of removal at pleasure is incidental to the power of appointing, in the absence of any inconsistent limitation in the law which creates the authority to appoint. If the law provides a term for the incumbency, this will supersede the incidental power of removal during the continuance of the term. If, notwithstanding the term, provision is made for a removal upon certain conditions, or for certain reasons, there can be no valid removal pending the term unless such conditions or reasons appear, either presumptively or otherwise. This is the substance of numerous adjudications which the industry of counsel has collated in aid of our inquiry, and all of which have been carefully examined.

It is of the first importance, therefore, to ascertain what was the tenure or term, if any, to the relator's official position, at the moment when the resolution declaring it vacated was adopted. If anything was vested in him by virtue of the previous acts of the board, it was the office of chief of police, in all completeness, with its entire tenure, duration, rights, and immunities, whatever these might be, as they were defined by the law of its creation. It was not in the power of the board to annul or abridge them, if his appointment was valid. That it was so, the defendants do not deny, nor could they be permitted to stultify themselves by so doing. As they could not make of the officer anything less than the law declared him to be, when once invested with the official title, we must look, for the object of our inquiry, to the

law rather than to the forms or the ‚omissions of form by which the board effected his induction into the office. We may, therefore, ignore, for every purpose in this connection, the board's failure to fix a term, or " time " for the relator's incumbency. That was a failure to perform a duty plainly enjoined by law, and could not add anything to their power over the officer or the office. It would be monstrous to assume that a refusal to discharge a duty can invest the recalcitrant with any lawful power or authority which would be denied him if he performed it.

An idea that the statutory powers given to the commissioners are equivalent to a direct authority to terminate an official service at pleasure, seems to grow out of a misconception of the language employed. If it were the actual service which the board is empowered to " determine," there might be some propriety in attaching to the word used a signification of closing, concluding, or ending, instead of that one more commonly understood, which implies a fixing, settling, or deciding upon. But the time, which " the board shall determine," is coupled with the appointment, and not with the service. To determine this " time " as directed, is to fix, settle, or decide what it shall be, as an *addendum* qualifying the effect of the appointment. In this relation, it becomes a time necessarily prospective and future. The clear intent of the command is, that the board shall annex to the appointment a time, term, or period, through whose duration the consequent duties, privileges, and emoluments are to remain with the appointee. This is the obvious and only English meaning of the words themselves. But if there were any ambiguity or uncertainty about them, the manifest policy of the statute, conspicuous in almost every line, would be conclusive of the same interpretation.

Does it appear in the legislative policy that the position of chief of police (and of the other officers) is to be one having a defined or definable term, or " time ; " or that it

is to be only an existing occupancy, whose duration must cease whenever it is so willed by the commissioners? The distinctly expressed purpose of the legislature is to secure to the inhabitants of a large city the amplest protection of their lives and property that can be found in a police system. The strongest incentives to manliness, faithfulness, and efficiency in the force are carefully provided for, and nowhere do these incentives appear 'more notably than in the guaranties of permanent employment to those who shall merit it by a faithful performance of duty, and the experience which comes of long service. They are not to be removed on account of political opinions, or for any other cause or reason than for unfitness.

The policeman, being appointed for four years — the full term permitted by the constitution — may be removed " only for cause, after a hearing by the board ; " and, having been faithful during his term, " shall, if otherwise qualified, be preferred by the board in making their new appointments." Here, the public servant is made to know that his position is not only assured for a definite term, but will also be extended beyond it, if his service be true. It is inconceivable that the law-maker could have contemplated holding out these strong incentives of definiteness and permanency to the privates, and yet not have found any reason for extending like incentives to the officers who were to control them, and in whom trustworthiness was of greater public necessity. Reasons may have been thought possible, why the board, if permitted, might wisely make the " time " tenures of the officers different from that which was common to the privates ; and so the permission was given. But it would be an extraordinary performance to find in this so enormous a departure from the pervading policy of the enactment as should leave the officers' tenures liable to be cut short in any moment of unreasoning caprice. There was no such departure. The officers' tenures, like the privates', are not to remain undetermined. " The board

shall determine " them.   If, as we think, these considera-
tions show that the office of chief of police, as intended by
the statute, is an office with a term, and not a tenancy at
will, our conclusion can suffer no detriment from the fact
that the legislature, instead of declaring the length of the
term, directed it to be determined by an agency especially
empowered so to do.

This emphasis upon the term, or " time," is not weak-
ened by the next following provision.   It would be super-
fluous, to say the least, to subject the officer to " removal
by the board for cause," if the board could remove him
at pleasure, whether for cause or no cause.   A very familiar
maxim of interpretation excludes all idea of such an
unmeaning duplication of power:  *Expressio unius est exclu-
sio alterius.*

Counsel undertake to show a parallel between this pro-
vision that the officers of police shall be " subject to removal
by the board for cause," and section 7, article XIV., of the
state constitution as interpreted by this court in *The State ex
rel.* v. *Hermann* (11 Mo. App. 49).   There is no semblance of
a parallel.   The sole and distinctly expressed purpose of that
section is to lay a cumulative duty upon the legislative depart-
ment.   " The general assembly shall, in addition to other
penalties, provide," etc.   The statutory provision before
us says nothing about what the board shall or shall not do.
All this is left to the regulations elsewhere, and to general
principles.   The form of the constitutional command forbids
an application of the maxim *expressio unius*, etc.   The only
way to make the statute resemble it would be by inserting
words so that it would read " in addition to removal at
the pleasure of the board, the officers shall also be subject
to removal by the board for cause."   Surely counsel would
not so mar the legislative rhetoric.   But the duplicative
words are not present, and the maxim applies.

It is insisted, however, for the commissioners, that, what-
ever might be the operation of the statute, if they had

given effect to it by defining the term of the chief's appoint-
ment, yet, as the case stands, their omission to do so
leaves the relator without any official tenure, save the will
of the board, who may therefore terminate it at their pleas-
ure.   We have already mentioned a conclusive reason why
this argument can not be entertained.   If the board, whether
intentionally or otherwise, may thus create a chief of
police with an official tenure not recognized by the law
from which they derive their authority, but in fact forbidden
by it, they may, in plain terms, repeal the statute and enact
a law of their own.   Upon this theory, the defendants' re-
turn would show that, for more than two years past, the
citizens of St. Louis have been deprived of their rights to
a chief enjoying the guarantee of a definite term, and so far
secured against degrading influences that might threaten
his position, and in place thereof, there has been thrust
upon them a puppet, subject to dismissal by the commis-
sioners whenever so inclined, whatever may be his faithful-
ness, competency, and thorough fitness for the office.   All
this the defendants have done, in direct and inexcusable
violation of law, if their own theory of legal results is to be
accepted.   But, fortunately for them, their theory is wrong.
There seems good reason for supposing that the law will
not impute to them so gross a dereliction when it may pre-
sume, instead, that in declining to annex a " time " to the
relator's appointment, they left it to be determined by the
constitutional limitation of four years.   We are not to be
understood, however, as judicially deciding that this pre-
sumption exists.   The question is not submitted to us in
this proceeding.   We have nothing to do with the future of
the relator's position.   We refer to the possible presump-
tion, only to show that there are means by which the law
may vindicate its own supremacy, rather than accept the
virtual dethronement offered by the commissioners.   The
presumption might serve also as a foil to the inadmissible
suggestion that the relator's appointment was void, for lack

of the specific term which the law required the commissioners to fix. At the same time, his *de facto* incumbency, and its recognition by them, raise an independent presumption of regularity in his appointment, which the defendants are estopped to deny.

It may be added, in this connection, that we can not admit the proposition of counsel that, if the commissioners should fix an official term at four years, they might, nevertheless, "in one month, abridge the tenure to one year." The, term, when once designated by the board, becomes the legal term for that appointment, and their authority over it, as such, is exhausted. No authority is given them to shorten it. To do so, would be, in effect, a removal without cause.

A law, prescribing an oath that the affiant will do a particular thing, means nothing, if not a legal obligation to do that thing. It is not to be supposed that the law will require a man to swear that he will do what it does not intend that he shall do. The oath prescribed for the commissioners, that they will not "appoint or remove any policeman, or officer of police, or other person under them, * * * for any other cause or reason than the fitness or unfitness of such person * * * for the place to which he shall be appointed, or from which he shall be removed," is not only a distinct declaration of what shall be necessary to constitute a cause for removal, but is also a direct command that there shall be no removal without such cause. We are flooded with citations of authorities to the effect that where a power is expressly given to remove for cause — whether the cause be defined or left to inference — this implies that there shall be no removal without such cause. But there is no need for either authority or implication in the presence of a statute so explicit. It announces in plain words the exact prohibition which the authorities in other cases find implied. Term or no term of office, it forbids the removal without the specified cause, in any and every case, whatever may have been the form or the terms of the

board's appointment. In the absence of such cause the officer will fill out his term if there be one. If there be no term declared, the constitutional limitation of four years will furnish a conclusive answer to the objection that, without a right of removal by the board, he might hold his office for life. Legislative acts must always be construed with a reference to existing constitutional regulations on the same subject.

But it is contended for the defendants that even if it be understood that they could not lawfully remove the relator without cause, yet he can gain nothing thereby in this proceeding, because there is a legal presumption that the commissioners found a sufficient cause, proved to their satisfaction, and, no appeal from their decision being provided for, the judicial discretion exercised by them can not be reviewed. As to their judicial discretion it does not appear that they exercised any. They decided no question of fact. They simply put forth an effort of personal will. It may be admitted, as far as this case is concerned, that, if it could be gathered from their record that they had heard any competent evidence of an existent cause for removal, their verdict upon the issue of fact should not be questioned. The broadest adjudications to this effect, however, require that there must have been as much legal evidence as would justify a court in submitting the issue to a jury. *The People ex rel.* v. *Fire Commissioners*, 72 N. Y. 445; *The People ex rel.* v. *Mayor*, 10 Hun, 441; *The People* v. *Campbell*, 82 N. Y. 255; *The People* v. *Board of Police*, 39 N. Y. 506; *Osgood* v. *Nelson*, 5 L. R. H. L. Cas. 636. But the commissioners' record fails to show that they heard sufficient evidence, or any evidence, or that any issue was in fact, raised or considered.

This, as will presently appear, is conclusive that there was no such hearing, evidence, or issue; and that therefore there was no judicial hearing, action, or decision to claim exemption from review. The only question is, whether the

commissioners, in what they did, acted within their jurisdiction.

Counsel for the defendants refer us to a number of decisions which they regard as sustaining the doctrine that where an officer has power to remove for cause, and nothing appears to show whether there was cause or not, it will be presumed from the act of removal. that he first satisfied himself by sufficient evidence, and then decided that the competent cause did exist; wherefore his decision must stand, as not being subject to review by any other authority. Such seems to be the effect of the decisions in *Keenan* v. *Perry* (24 Texas, 253), and *The State* v. *Doherty* (25 La. Ann. 119). But an important distinction makes it quite clear that these cases are no authority for the matter here in hand. In each of them it was the governor of a state whose action, in the discharge of his constitutional executive functions, was criticised. In another case (*McElrath* v. *United States*, 102 U. S. 426), it was the president whose executive proceedings were called in question. A well understood presumption, in such cases, rests upon fundamental principles. Our national and state governments are constituted in three equal and co-ordinate departments, legislative, executive, and judicial, each being supreme within its constitutional sphere. No one of them has any authority to review, reform, or set aside the action of another, when done within its organic line of duty. Hence, it is never to be assumed, without conclusive proof of the fact, that either department, while acting through its visible representative, upon a subject-matter within its proper province, has usurped an unlawful authority, and transcended its constitutional limitations. As a correlative proposition, the contrary will always be presumed until disproved by positive testimony.

A familiar illustration of this rule appears in the presumption of interpretation, among others, that the legislature in adopting a statute intended a meaning within the

bounds of its constitutional authority to pass laws ; so that ambiguous or uncertain terms will always be construed with reference to this presumption.   Other illustrations appear in the frequent presumptions of lawful procedure, where the records are silent, by courts of record, which are the visible representatives of the judicial department.   The governor is the chief exponent of the executive department, and the same sort of credence is extended to his official acts.   *Attorney-General* v. *Brown*, 1 Wis. 513 ; *Hartranft's Appeal*, 85 Pa. St. 433.   Hence, in *The State* v. *Doherty* (*supra*), where the governor had authority to remove a tax collector for " refusing or failing to do his duty," there was good reason for holding that " when the governor removed the defendant and appointed the relator, he decided that the defendant had failed or refused to do his duty, because it was in this contingency only that he had the right to remove him.   The court said, further, that, " to institute the inquiry as to the correctness of the cause for which the governor removed the defendant, would be a direct attack upon the independence of the executive, and a usurpation of power subversive of the constitution." The other two decisions mentioned, so far as they touch the precise point here under consideration, were controlled by similar views of the executive authority.

But in the case of inferior judicatories and depositories of specially delegated and limited powers, the rule is universally the opposite.   As to them, " nothing shall be intended to be within the jurisdiction that is not expressly averred so to be.   So, that if the proceedings   *   *   * fail to show that which was necessary to confer jurisdiction, the whole is an absolute nullity."   *The State ex rel.* v. *Cohen*, 13 S. C. 201 ; *Devall* v. *Taylor*, 1 Cheaves, 5 ; *The People ex rel.* v. *Board of Police*, 6 Abb. Pr. 162 ; *The People ex rel.* v. *Cholwell*, 6 Abb. Pr. 151 ; *Owens* v. *Andrew County Court*, 49 Mo. 372.   Said the New York supreme court, in *The People ex rel.* v. *Board of Police*

(35 Barb. 536) : " It is no part of the duty of this court to uphold an exclusion from office by intendment where we are not certain that the existing facts would and ought, in right and justice, to produce a judgment of exclusion or removal by the competent authority." It results from the rules so universally accepted, that the absence of any showing in the commissioners' record of a cause for the removal of the relator in this case, or of any adjudication by them upon any evidence of such cause, must be treated as conclusive that no such cause existed, and that there was no such adjudication. The essential conditions being absent, the board had no jurisdiction to vacate the relator's office.

Many decisions are referred to by the counsel on both sides in support of their respective views. To review them in detail would require more space than can be given to this opinion. We have examined them all carefully, and find the overwhelming weight of their authority in harmony with the principles which compel the conclusions we have reached. Some departures there are in matters of detail or of special application ; but they are wholly immaterial here, in view of the peculiar aspects of the present case and of the statutes which must control it.

So much of the resolution of October 9, 1883, as rescinds the order of April 10, 1883, requires no attention. The rescinded order was inoperative for any purpose, unless as a mere commendatory expression touching the manner in which the person mentioned was performing his duties. He was already in office by virtue of the original appointment, and without that order would have continued to be so all the same. There is no authority for supposing that his incumbency was prolonged by force of that order. He held by a better title, and does not appear to have had any hand in the making of it. So much of the same resolution of October 9, 1883, as declares vacant the office of chief of police, is reversed, quashed, and annulled. All the judges concur.