JOHN BUTKOVITCH, Appellee, v. CENTERVILLE BLOCK COAL COMPANY, Appellant.

**MASTER AND SERVANT:** Insufficient Haulageway in Mine. Negligence results from the failure of a mine owner operating under the long-wall system to maintain haulageways for draft animals at a narrower width than eight feet, unless the state mine inspector has *determined* that such width is impracticable. (Sec. 2486-1, Code Supp., 1913.)

**MASTER AND SERVANT:** Width of Haulageways—Determination by Inspector. The statutory "determination" by the state mine inspector that it is not practicable to maintain a haulageway in a mine operated under the long-wall system at a narrower width than eight feet must be a *definite* determination—may not consist of a mere failure to object to a narrower width. Whether such "determination" may be by word of mouth or must be by some formal writing, *quaere.*

**WITNESSES:** Cross-Examination—Explanation of What Witness Means. In an action for injury in a mine haulageway, and on

the issue whether a state inspector had determined that the haulageway could not, in practice, be maintained at a width of eight feet, the inspector may, on cross-examination, testify that, had he made the determination as to the way in question, he would have made it in writing.

NEGLIGENCE:  Evidence—Repairs Subsequent to Injury.  Repairs
4  to a place of injury subsequent to the time of injury may not be shown for the purpose of establishing negligence at the time of injury, but such evidence may be admissible on other material issues arising in the case.

TRIAL:  Permissible Argument.  Record reviewed, and *held* that
5  argument was within the record.

MASTER AND SERVANT:  Workmen's Compensation Act—Rejec-
6  tion—Assumption of Risk and Negligence.  Assumption of risk and nonwillful negligence are not permissible issues in an action by an injured servant against a master who has rejected the provisions of the Workmen's Compensation Act.

*Appeal from Appanoose District Court.*—D. M. ANDERSON, Judge.

MAY 4, 1920.

ACTION at law, brought July 28, 1917, to recover damages for personal injuries sustained February 24, 1915, in an entry of defendant's mine. Trial to a jury and verdict and judgment for plaintiff for $500. Defendant appeals.—*Affirmed.*

*Howell, Elgin & Howell,* for appellant.

*John T. Clarkson* and *Wilson & Smith,* for appellee.

PRESTON, J.—Plaintiff alleged, substantially, that, on and prior to February 24, 1915, he was in the employ of the defendant, an incorporated coal company, and had theretofore been engaged in mining coal; that, on or about said 24th of February, he was engaged and employed by said defendant as a mule driver; and that, while in the performance of his duty on the twelfth south entry off the

main entry, he sustained an injury, by being caught between two cars of coal, which injury was brought about by reason of the fact that the coal on the cars caught or collided with the sides of the entry or haulageway; that, at the time of the injury, the defendant had given notice rejecting the Workmen's Compensation Law; and that plaintiff had not rejected the law. Defendant denied generally, and alleged that, within three weeks prior to the accident, plaintiff had made complaint that, at the place where he was injured, his coal was ribbing at times; that the mine foreman directed plaintiff to take another man and fix the place so that it would not rib; that, before the accident, plaintiff and such other man did go to said place and take down certain rock, and thereafter told the foreman that it was all right; that the foreman relied upon plaintiff's statements, and believed it had been fixed so that the sides of the entry would not come in contact with loaded cars of coal, and, relying thereon, the said foreman failed to take any action to make the entry higher and wider; that the condition of the entry was the same at the time of the accident as at the time plaintiff reported he had fixed it. By reason of these matters, defendant alleges that plaintiff was estopped from claiming that the entry was low or narrow at the point in question, and is estopped from claiming that defendant failed to exercise ordinary care in maintaining the entry in a reasonably safe condition; that plaintiff's negligence, at and prior to the time of the accident, was the proximate cause of the injury; that plaintiff's negligence contributed to his injury; and that the same was brought about altogether by the negligence of plaintiff. These affirmative matters are denied in plaintiff's reply.

The evidence was such, without conflict as to some matters, and at others upon conflicting evidence, that the jury could have found that defendant's mine was operated on

the long-wall system: that is, the plan is so designed that, after the shaft is sunk to the coal strata, entries are driven in the vein of coal for a short distance; then the works are opened up in circular form, and, from that point onward, all the coal is removed.  No pillars of coal are left in as supports; instead, the coal vein being low, refuse material is thrown back and forced up against the roof as tightly as practicable; props placed under the roof lend some support; and, in addition, large blocks of slate are used, to build a wall on each side of the roadway, so that the roof gradually settles down upon the roof, props, and gob.  In the long-wall system, main entries are maintained, which go directly from the shaft, and from these, skip or cross entries are constructed; a wall is constructed in these main- and skip entries; the skip entries are approximately at right angles from the main entries, though they run more or less in a diagonal or oblique direction to reach the face where the miners are getting out the coal.  In this mine, in the main haulageway or entry, a mechanical haulage was in use, where the loaded cars were hauled from the parting or switch, and empty cars were taken from the shaft to such parting; mule drivers hauled empty cars from the parting to the face, and loaded cars from the face to the main mechanical haulageway, or the main parting.  In the performance of his duty, plaintiff performed the greater portion of his work on and along what is termed the twelfth south skip entry.  As the coal was mined and loaded out, the main entries were prosecuted forward, new skip entries were constructed, beginning at the main entry and driven at approximately right angles.  These entries were used as haulageway, through which coal is hauled by animal power.  As new skip entries were constructed, the old ones were abandoned and closed.  The coal vein is about 2½ feet thick.  Under this are about 10 inches of fire clay; and over the coal there are 5 or 6 inches of draw slate; and

above this, what is called a clod, 5 or 6 inches thick; and in some places, another thin layer of slate. Above all these is a hard, strong substance, termed the cap rock, and permanent roof. These substances between the coal and cap rock are ordinarily taken down with the coal, and utilized in building walls for the roadway. In the main entries and in the skip entries, the fire clay underneath is taken out. In the long-wall system, where the coal is taken out, the roof gradually settles down, some 50 feet from the working face, varying according to the amount of gob thrown back, and props and walls. This settling is sometimes called the squeeze. The settling has a tendency to narrow the entries. There is evidence tending to show that, when the settling is going on, it is not practicable to maintain the entries 8 feet wide, but that, after the weight is settled, it is not impracticable. According to defendant's testimony, the entry in question was between 8 and 9 feet wide when it was started, and in the neighborhood of 6 feet at the time plaintiff was hurt. Plaintiff's evidence is that it was somewhat narrower than that. It frequently occurs that the roof settles so that it is necessary to take down a portion of the cap rock, in order to make sufficient height for the mules and cars to pass along. Such was the situation at the place where plaintiff was hurt. What is called a channel in the roof or in the cap rock was made by shooting down a part of it. The place where the cap rock had been shot down, which was immediately over the track, left a space at the high point about 18 inches wide, and at the bottom it was about 45 inches wide, measuring across the entry,—just wide enough for the mule to go through. The cars were low. Upon the sides were boards about 6 or 7 inches wide, placed on edge, and from that, another board, about the same width, forming the wing or flare. After the bed was loaded with the smaller coal, the miners placed large chunks of coal extending to the wings, and it was

these large chunks that came in contact with the so-called channel in the cap rock. Because of the narrowness of the channel, and the coal on the top of the car, extending above the lower edge of the cap rock, the coal on the cars sometimes came in contact with the cap rock, "ribbing," as the driver termed it, because the haulageway was too narrow. Plaintiff claims that the miners did not always load the cars properly, and that the cars were not all loaded the same width; and, as we understand his evidence, he claims that some of the cars were wider than others. Plaintiff's evidence is that the car in question was loaded even with the bed of the car, and defendant's evidence tends to show that it was loaded so as to extend out beyond. Plaintiff says he never had the miners load coal for him to extend beyond the car. A witness for defendant says that, if a chunk of coal would get out an inch and a half beyond the wing, it would catch. Plaintiff says that, while he knew chunks had been pulled off before at other places, he did not know that this was so at the place he was hurt. Prior to his injury, plaintiff complained to the mine foreman that the cars of coal were ribbing, and requested that the haulageway be fixed. Plaintiff at first worked for defendant as a miner, digging coal; but, a few weeks prior to his injury, began working as a driver in the twelfth south entry, and other entries in said mine. At the time plaintiff was injured, he was riding between two cars on the hitching or coupling, between the first and second cars. The chunks of coal, coming in contact with the cap rock, forced the chunks back towards the rear car, causing the cars to leave the track, and injured plaintiff. There is a dispute in the evidence as to whether plaintiff was riding in the proper place, and in the proper way, according to the custom; but the jury could have found that the drivers in this mine, as was the custom in the low coal field, used different means and ways, these varying according to conditions, and that

generally the drivers rode the hitching between the first and second cars.

Appellant has assigned 46 errors.    Manifestly, we should not take the space to discuss each one in ·detail. Some are of minor importance.    There is some repetition: that is, the same questions are presented in different ways. We shall take up and consider the points which seem to be of sufficient importance.

1. Ten of the errors relate to the question as to whether or not the state mine inspector had determined the question as to whether it was practicable to maintain the entry

1. MASTER AND SERVANT: insufficient haulageway, in mine.

at the place where the injury occurred at substantially eight feet in width.    The er· rors relate to the rulings of the court upon objections to evidence, the instructions, and so on.    This question is argued at great length, and seems to be one of the main points relied up- on.    Section 2486-1, Code Supplement, 1913, provides. in substance, that entries in which hauling is being done by draft animals shall be maintained substantially eight feet in width, from one rib or side of the entry or haul- ageway to the opposite side, etc., provided that the sec- tion shall not apply in long-wall work, when the inspector of the district where the mine is located shall determine that it is impracticable to maintain the width of the en- try or haulageway as therein provided.    The statute does not state whether the determination shall be in writing or otherwise, or how or when it shall be made.    Appel- lant contends that it is not necessary that it should be in writing.    The mine inspector for that district was called as a witness for the defendant, who testifies that he was fa- miliar with the statute since its enactment.    He testifies that he went through this mine about January, 1914, and that he probably inspected it more closely the first, or pos- sibly the second, time.    This was more than a year before

plaintiff was hurt. There may have been settling of the roof after the visit by the inspector. If it had become settled at that time, then, as before stated, the evidence tends to show that it would be practicable to maintain the entries at the required width of substantially eight feet; but the witness testified that he did not, at any time he was there, make such determination. This evidence was brought out on cross-examination, and over objection by defendant. We think it was competent, and that, in view of the direct examination, it was proper cross-examination. At this point, the trial court instructed substantially that, under the undisputed competent evidence in the case, the inspector had not determined that it was not practicable to maintain the entries where plaintiff claims to have been injured, substantially eight feet in width; and that, under the laws of this state, defendant was bound to keep said entry at substantially eight feet in width; and that, if it was less than that, then defendant was negligent in maintaining said entry in said condition; and that such negligence is presumed to have been the proximate cause of plaintiff's injury, and that the burden is then upon defendant to overcome such presumption. The defendant offered instructions on this subject, two of which will be set out. There may be some others involving the same thought, stated in different ways. Instructions 6 and 8, so offered, read:

"6. You are instructed that defendant company was not compelled, in its long-wall mine, to maintain its skip entries any particular width, but was only compelled to exercise ordinary care in maintaining them wide enough to permit the passage of coal that was properly loaded: that is, loaded in accordance with the custom prevailing either in the Hawkeye mine or in this low coal field.

"8. You are instructed that, according to the undisputed evidence, the Hawkeye mine in question, at the time of the accident, was known as a long-wall mine, and that

the skip entries, although commenced at the face and driven eight feet wide, are subjected to what is known as 'squeeze,' which results in making the said skip entry more narrow, the farther the entry at any given point is removed from the face of coal. The evidence establishes, without dispute, that this squeezing process cannot be prevented by the company, and further, that the company is not compelled to maintain its long-wall skip entry at eight feet wide, as originally constructed, but is only required to exercise ordinary care in maintaining its skip entry in an ordinarily safe condition, bearing in mind that the company has a right to assume that those using its skip entries, including the mule driver, and including the miners who load the coal cars, will so use and so load and so haul, in accordance with the general custom prevailing in the Hawkeye mine at the time of the accident, or prevailing in what is known as this low coal field."

Appellant cites 14 Cyc. 236, where a definition of "determine" is given, as follows:

"To decide; to settle; to end; to bring to an end; resolve; to come to a decision; to ascertain or state definitely."

See, also, 18 Corpus Juris 984. He cites, also, *State v. Carter*, 144 Iowa 371, 374, as holding, under another statute, that such words should be so construed as to carry out the plain intent of the statute, without giving such words a technical meaning. Appellee's contention is that determination, within the meaning of the law and the power vested in the mine inspector, is, in effect, an order, an adjudication, or, in any event, expressed permission to vary from the standards as fixed by the statute (citing *Becker v. Jones* [Wis.] 157 N. W. 789; *State v. Police Commissioners*, 14 Mo. App. 297; *Atlantic & P. R. Co. v. United States*, 76 Fed. 186; *State v. Board of Education*, 35 Ohio St. 368; *New Jersey R. & T. Co. v. Suydam*, 17 N. J. L. 25). It is

unnecessary to review and discuss these cases, because, as said, the mine inspector himself testified that he had not determined the matter as contended by appellant. We think the trial court properly instructed that, under the undisputed evidence, the mine inspector had not made such determination, and that, outside of the statement that the evidence is undisputed, the instruction is correct, under the statute and the law.

But it is thought by appellant that such determination might be found by the jury from the words and actions, or failure of the mine inspector to speak and object at times he inspected the entry in controversy, prior to the accident, and that it was a question for the jury to say whether the inspector had made such determination. Defendant offered instructions on this theory, and that it was the duty of the mine inspector to see to it that the entries were of the proper width. It may be said in passing that, conceding that such was the duty of the inspector, there was also a duty resting upon the defendant, and further, that there is no claim, and it could not well be made, that the inspector could make any determination that the entries should be so narrow as not to permit cars to pass. There was some evidence admitted on this subject, without objection, but in a negative form. For instance, the mine inspector, Mr. Holland, testified that he does not remember stating to defendant company that its entries could be maintained at the width of eight feet; does not remember saying verbally to defendant's mine foreman, Mr. Hunter, or his superiors, that it was practicable for them to maintain their skip entries eight feet wide; never made any complaint to them that their entries were not wide enough. The court, however, excluded much of the offered testimony by which defendant sought to show by its foreman, Hunter, that he went

*2. MASTER AND SERVANT: width of haulageways: determination by inspector.*

through the mine and this entry, so far as it had been driven, with the mine inspector, the first time the inspector went through the mine, and called the inspector's attention to the narrowness of the entry, and that the inspector said it had squeezed in, and that it couldn't be helped, in the long-wall system. We are of opinion that this falls short of a definite ascertainment or determination that it was impracticable, at the time plaintiff was hurt, or at any time, to provide entries of the required width.

2. It is thought by appellant, and assigned as error, that the court did not strike out, on defendant's motion, a statement by the mine inspector that, if he had made a determination such as that now in question, **3. WITNESSES: cross-examination: explanation of what witness means.** "it would have been made in writing, and filed away in the State House with my report." The only objection to the answer was that it was incompetent; but this evidence came on recross-examination, after witness had been interrogated on direct, cross, and redirect examination, as to what he had observed and done, and what he meant by the word "determine." It appears that the witness had not understood some of the questions, and counsel, perhaps, did not understand the witness. A part of the record on this follows:

"Q. In answer to a question to me, you started to say, and did say, 'if there had been a determination,—' and objection was made that it was not responsive to the question I had asked. You may go on and say what you were going to say, when you started by saying 'if there had been a determination.' (Same objection. Overruled. Defendant excepts. Further objection that it cannot be a competent answer with that start, and not calling for a statement of fact. The court: 'You didn't give him a very good opportunity to say.' Defendant excepts.) A. If there had been a determination of that kind made by either me or any

other inspector. (Defendant moves to strike that out. Sustained. Plaintiff excepts.) A. By me, then, it would have been made in writing and filed away in the State House with my report. (Defendant moves to strike that out as incompetent. Overruled. Defendant excepts.) When I make a determination of that kind, I put it in writing."

There seems to have been no objection to the last question and answer. Thereupon, counsel for appellant further examined the witness, on redirect examination, as follows:

"Q. I understand you, then. Don't you, when you visit a mine, when you look over it and find something out of the way, don't you make suggestions verbally to one of the management, either the pit boss or the operator? A. Most of them are made in writing. Q. Some of your recommendation, you say, you do not make in writing? A. Some that are of no consequence or of little consequence."

The answer objected to was no more than the witness' saying what his practice was; and, under the circumstances, we think there was no error.

3. It is thought that the court erred in not permitting counsel for defendant to ask leading questions of his witness Holland, the mine inspector, for that the witness was unfriendly to the defendant, or to defendant's counsel. There is nothing in the examination of the witness in chief to indicate any antagonism; but, on some of the redirect examinations, witness seems to have taken offense at some of the questions propounded by defendant's counsel, and at the attempt to require witness to answer yes or no, and so on. But few objections were made because the questions were leading, and we think it was a matter within the discretion of the trial court.

4. Several errors are assigned in regard to evidence of subsequent repairs, and the taking down of a part of the cap rock after plaintiff was hurt. These have reference to

the evidence and to an instruction by the court. It was in connection with evidence as to certain measurements as to width and dates. It is not disputed by appellee that, ordinarily, such evidence is not competent. But the situation in the instant case is not the same as in *See v. Wabash R. Co.*, 123 Iowa 443, 447, and other cases cited by appellant. In this case, defendant introduced evidence tending to show that the rock had been shot down, and that the haulageway was wide enough to permit cars to pass through, both before and after the injury. There was also evidence on the part of appellant that the rocks did not need to be taken down; and further, defendant introduced evidence tending to show that the rock could not be taken down. It was claimed by appellant that there was no change of conditions. It was further claimed by appellant that its foreman made measurements at the place where the injury occurred. It was competent, therefore, for plaintiff to show that the roof was taken down, and could be taken down; that there had been a change of conditions which would permit the cars to pass through safely, because of the changed conditions. And it was competent for appellee to introduce evidence tending to show the change of conditions at the time the measurements were made. *Beck v. Beck Coal & Min. Co.*, 180 Iowa 1, 19. The court instructed on this feature of the case as follows:

*4. NEGLIGENCE: evidence: repairs subsequent to injury.*

"14. Evidence has been admitted tending to show that some of the cap rock was taken down from the entry where plaintiff claims to have been injured, after the date of said injury. This evidence was drawn out when a witness was being examined as to what parties had taken down said cap rock and when it was taken down. The fact that the entry was repaired after the accident is not competent evidence that the entry was out of repair will not be considered by the jury for that purpose. It is competent evidence, how-

ever, as to when and who in fact took down the rock. and whether it was taken down before or after measurements were made by the mine foreman."

We think there was no error in regard to this.

5. It is thought to be erroneous that counsel for plaintiff referred to the matter just mentioned in argument, and said that taking down the rock alone ought to convince the jury that the company knew the place was dangerous; but this was in connection with the argument as to whether it was taken down before or after, and that defendant claimed it was before the injury. Counsel further said:

5. TRIAL: permissible argument.

"And then we hear the claim that, in addition to that, Lew Meyers went and took down this rock before this accident, 8 or 9 days—that was the claim. It was not fixed by Lew Meyers at all before the accident. The only time he ever went there was the second day after Butkovitch was hurt, the next day being an idle day."

Counsel further said, in the same connection:

"If he [Hunter, the foreman] knew before that it was dangerous or was not, why was he asking John Butkovitch to go there and take the rock down, in response to John's complaint that the place was too low or too narrow? If he knew it was all right, why didn't he say, 'The cars go through all right. It isn't dangerous.' But instead of that, he admitted by his conduct that the place was too low, was too narrow; that he was maintaining a place that was not safe, and wanted somebody to fix it. But he got too careless, and somebody got hurt, and he is here now, trying to throw the responsibility on Buell and Radovich or the plaintiff."

Under the record, we think this was not unwarranted argument, and that it was not prejudicial.

6. As to the alleged estoppel pleaded by appellant,

which appellee contends is but another way to attempt to apply the doctrines of assumption of risk and contribu-

6. MASTER AND SERVANT: Workmen's Compensation Act: rejection: assumption of risk and negligence.

tory negligence, it is true that the mine foreman testified, as the defendant had pleaded, that plaintiff was sent to fix the entry in question before he was injured, and that plaintiff told the foreman that he had taken down the rock, and that it was all right. But this was denied by plaintiff. It seems to us that the bearing of this evidence would be on the question of assumption of risk, and possibly contributory negligence, in that it is claimed that plaintiff knew of the conditions, and continued to work after complaint by him. It appears without conflict that plaintiff was an employee of the defendant company, and that he sustained an injury arising out of and in the course of his employment. The defendant had rejected the provisions of the Compensation Law, and was under obligation to pay compensation for negligence as at common law, as modified by the statute. The Compensation Act, Section 2477-m (c), Code Supplement, 1913, provides, in substance, that the company shall not escape liability on the ground that the employee assumed the risk, or that he was negligent, unless negligence was willful, and with intent to cause the injury, and so on; and further, that it shall be presumed that the injury to the employee was the direct result and growing out of the negligence of the employer, and that such negligence was the proximate cause of the injury; and places the burden of proof on the employer to rebut such presumption. It was alleged in the pleadings that defendant was not within the Compensation Law, and the court properly instructed in reference thereto, and in harmony with the law. The court instructed, among other things:

"9. The two propositions of negligence or freedom from negligence upon the part of the defendant company to

which the evidence in this case has been directed are: First, Did the defendant, at the place where plaintiff claims to have been injured, maintain its entry of the width provided by the laws of this state? and, second, Did the defendant, at the place where plaintiff claims to have been injured, use ordinary care to provide the plaintiff a reasonably safe place in which to do his work? If the defendant has failed to prove, by the preponderance or greater weight of the evidence in the case, that it was free from negligence in both the particulars stated, and which was the proximate cause of plaintiff's injury, then the plaintiff will be entitled to a verdict at your hands. If the defendant has proven, by the preponderance or greater weight of the evidence in the case, that it was free from negligence in both particulars stated, or that such negligence, if not disproved, was not the proximate cause of plaintiff's injury, then the defendant will be entitled to a verdict at your hands."

He later stated the law in more elaboration, as to the two points, and then said, in part:

"13. If the defendant has proven, by the preponderance or greater weight of the evidence in the case, that it was free from negligence which was the proximate cause of the plaintiff's injury, then you need consider the case no further, but return your verdict for the defendant."

We think the instructions of the court cover all points, and all that defendant was entitled to. There was evidence of negligence, as well as the presumption of negligence, and it was for the jury to say whether defendant had overcome the presumption. There was no evidence that plaintiff was intoxicated, or that he was guilty of willful negligence. It should have been said before that, at the close of plaintiff's evidence, and again at the close of all the evidence, defendant moved for a directed verdict. The motion was properly overruled.

Other minor matters are argued, but such as seem to be controlling have been discussed. Upon a consideration of the entire record, we reach the conclusion that there was no prejudicial error in the trial of the case, and the judgment is, therefore,—*Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.